FRANCIS HOFFMAN, PLAINTIFF-RESPONDENT, v. HAROLD GOLDFIELD AND ABEL CALDWELL, DEFENDANTS-APPELLANTS.

Submitted October 6, 1942—Decided January 25, 1943.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the plaintiff-respondent, *John L. McGuire* (*Samuel J. Marantz,* of counsel).

For the defendants-appellants, *Townsend & Doyle* (*Mark Townsend* and *Thomas F. Doyle,* of counsel).

PER CURIAM.

This is defendant's appeal from plaintiff's judgment in the Union County Court of Common Pleas. The plaintiff was seriously injured as the result of a collision between two automobiles, one owned by the defendant Dr. Goldfield and driven by his employee, Abel Caldwell; the other owned by Edward Hennessey and driven by his agent, Peter Conley. The plaintiff, a victim of the collision, was on the sidewalk waiting for a bus near the intersection of Sixth and East Jersey Streets, in Elizabeth, when the collision between the two cars occurred. The Goldfield car, after the collision, skidded into an automobile parked in the vicinity and drove it against and upon the plaintiff. The jury returned a verdict of no cause for action against the defendants Hennessey and Conley, but returned a verdict against Goldfield and Caldwell.

There are ten grounds of appeal listed. They are argued under four headings. Under the first it is contended that the trial court erred in refusing to strike out certain testimony of the plaintiff's witness, Dr. Weigel. The theory of the objection is that the witness made examination of the plaintiff for trial purposes about two weeks before the case was to be tried and that the plaintiff then told the doctor about his subjective symptoms from which he arrived at a conclusion. Evidence offered by a non-treating physician, based on what the patient tells him, a prospective witness, about his condition, is not competent. It is hearsay and likely always to be harmful because of the injured person's self-interest. But such was not the situation here. The doctor was the treating physician. He had charge of the plaintiff as an orthopedic specialist throughout the plaintiff's hospitalization which lasted from the time of the accident, February 17th, to April 26th, 1941, and thereafter treated him until October. Furthermore, on the plaintiff's visit to Dr. Weigel two weeks before the trial, the plaintiff, according to the doctor's testimony, came for examination "because of continued head pains and dizziness." The declaration made by a patient to the doctor who is treating him, and on whose treatment he relies for cure, is (although it is hearsay)

admissible in evidence. This exception rests on the practical reason that a patient, anxious to get well, will likely be truthful to his doctor. Compare *Consolidated Traction Co.* v. *Lambertson*, 60 *N. J. L.* 452; 38 *Atl. Rep.* 683. The motion to strike was properly overruled.

It is next said the court erred in refusing to strike out part of one of Dr. Weigel's answers to a question. The doctor was under cross-examination concerning the day-to-day statements on a hospital record that was not then or subsequently received in evidence. It seems that fractures in the plaintiff's left leg were not discovered until X-ray pictures were taken twenty-two days after the accident and that X-ray pictures of the right leg were not made until thirty-five days after the accident. Appellants were endeavoring to show that the plaintiff had been "up and around" in the interval before the leg fractures were discovered. The doctor was testifying from a chart record which he had not made. It had been excluded as evidence on plaintiff's objection. At any rate, entries on the chart indicated that the plaintiff was in a wheel chair on February 27th, which was ten days after the accident. Then came the following questions:

"*Q.* He was up in a wheel chair the next day, the 28th [eleven days after the accident], wasn't he? *A.* It says that here.

"*Q.* Then on March 2d, he was up and around and it doesn't say a single word about any wheel chair, isn't that true? *A.* It says on the record he was up and around.

"*Q.* And that continued daily and until March 11th, when he got the leg X-rayed and you applied a cast to his left leg? *A.* It says that on the note here. *He did not stand, however, I know that.*"

At this juncture appellant asked that the last part of the answer be struck out. The motion was refused and an exception was entered. It is to be remembered that the record or chart was not in evidence. Appellant nonetheless cross-examined the witness on its contents. This should not have been permitted. The chart was hearsay. Nevertheless, after much unseemly argument between counsel, plaintiff withdrew his objection to the admission of the chart in evidence yet it

was not offered or received in evidence and the cross-examination continued. We find no harm in the court's refusal to strike out the part of the answer complained of. As a matter of fact, in the record a moment previously the doctor, on cross-examination, said: "I did not order the man [plaintiff] up and around and as a matter of fact he *did not stand up, to my knowledge, nor with my consent.*" This testimony was not objected to. Its reception a second time did no harm; it was already before the jury.

It is next said the court erred in overruling five questions put to the witness, Conley, a defendant in the case. The witness was asked substantially the same question in five different forms as to whether he made a criminal complaint against Caldwell, the driver of the Goldfield car. In our judgment, the question or questions were irrelevant. (*Cf. Hintz* v. *Roberts,* 98 *N. J. L.* 768; 121 *Atl. Rep.* 711.) We also think the questions were clearly immaterial.

The next point comprehends six grounds of appeal argued together. The contention is that the court erred in refusing to grant a supplemental rule to show cause why there should not be a new trial based on newly discovered evidence. The state of case before us is confusing. This, however, is a statement of the events after the trial; judgment for the plaintiff, entered March 3d, 1942; order to show cause why the verdict should not be set aside, allowed under date of March 4th, 1942. This rule is printed out of its normal order and place in the record and carries a heading as an order denying a rule to show cause on newly discovered evidence, and, of course, it is nothing of the kind. The first rule to show cause was dismissed by the court on April 7th, 1942. Before this was done, and on March 23d, appellant appeared before the learned trial judge and presented three affidavits: the first by an investigator of an insurance company, Carroll; the second by another investigator, O'Rourke, and the third by a Dr. Brothers. These *ex parte* verified statements in substance said that plaintiff limped in the presence of the jury during the trial and that subsequent to the ·trial, motion pictures taken by O'Rourke showed him walking, running, &c., without a limp. The three affidavits were predicated

on the pictures taken by O'Rourke. The court refused to allow a rule to show cause or to permit depositions to be taken, holding that the evidence now sought to be produced was discoverable with due diligence prior to trial. Now this may not necessarily be true. It is possible the plaintiff simulated lameness and that these motion pictures could not have been obtained before or during the trial if the plaintiff was guilty of deception. We think nevertheless the court's ruling was right and the colloquy between court and counsel on the argument for the supplemental rule makes that clear. As a matter of fact, there was no testimony that the plaintiff limped; neither Dr. Weigel nor Dr. Ward, the X-ray specialist, made any such claim; nor did the court recollect that the plaintiff limped—only that his legs were somewhat stiff—a natural result after the fractures. At any rate, there is nothing in the record to show the plaintiff limped or made claim for any such disability. Further, whether or not the trial judge allowed the supplemental rule to show cause was a matter peculiarly within the discretion of the trial court. We perceive no abuse of discretion. Finally, the defendants in this cause might have applied to the court for an order to make physical examination of the plaintiff before trial. In all probability such an application would have been granted. No such application was made at that time. The belated application to reopen the case merits no particular sympathy. Under these circumstances, its denial, in our judgment, was not erroneous.

The judgment is affirmed, with costs.