88 N.J. Super. 187 (1965)
211 A.2d 380
JOSEPH AIELLO, PLAINTIFF-APPELLANT,
v.
R.W. MYZIE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1965.
Decided June 18, 1965.
*190 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Louis B. LeDuc argued the cause for appellant (Mr. Michael N. Kouvatas, attorney; Mr. Michael D. Varbalow, on the brief).
Mr. Michael P. King argued the cause for respondent (Messrs. Kisselman, Devine, Deighan & Montano, attorneys; Mr. Arthur Montano, of counsel; Mr. King, on the brief).
The opinion of the court was delivered by LABRECQUE, J.A.D.
Plaintiff seeks to set aside a Law Division judgment for $6,500 in his favor, based upon alleged trial errors and error in the denial of his two motions for a new trial.
Plaintiff sued for personal injuries sustained in an accident which occurred on October 9, 1961 when his car, which was *191 stopped preparatory to entering the expressway leading to the Walt Whitman Bridge, was struck in the rear by that of defendant. In addition to disputing liability, defendant contested his responsibility for a low back injury claimed by plaintiff for which he had undergone surgery, and by reason of which he was still disabled at the time of trial.
At the trial plaintiff, a driver for an armored car company, testified that the accident occurred as he was on his way to work. He was compelled to stop work some two or three hours after the crash due to pain and disability in his head, neck, shoulders and right arm. He received heat treatments to his neck until about November 30, 1961, and was then admitted to the West Jersey Hospital where he received conservative treatment, including a spinal tap and myelogram, over a period of 11 days. He was later readmitted to the same hospital where Dr. Stanley L. Brown, an orthopedic surgeon, performed a lumbosacral fusion. Up to the time of trial (June 17, 1963) he had not returned to work. He admitted involvement in an earlier accident in Philadelphia on August 19, 1960 but testified that the injury there had been to his "upper back" and that his recovery had been "perfect." His special damages (out-of-pocket expense) to date amounted to $6,496.60. Including future medical expense and loss of wages, they amounted to $7,144.
Dr. Brown testified that plaintiff had sustained, among his other injuries, "a traumatic aggravation of a preexisting congenital low back problem." The congenital condition was known as spina bifida occulta, involving an incomplete closure of the spinal canal at the level of the fifth lumbar vertebra and the first sacral segment. On February 4, 1963 he performed a laminectomy and fusion of the lumbosacral joint. He was of the opinion that the result was satisfactory although he would be better able to judge that when later tests were completed. In his opinion, based upon the history and his findings, the condition for which he treated and operated upon plaintiff was causally related to the accident.
*192 Additional phases of the medical testimony will be discussed infra. The jury found in favor of plaintiff by a vote of 10 to 2.
Plaintiff thereafter unsuccessfully moved for a new trial as to damages on the ground that the verdict was so inadequate as to be contrary to the weight of the evidence. While the matter was pending before us, plaintiff made a second motion for a new trial based upon alleged newly discovered evidence. This motion was likewise denied. The present appeal challenges the denial of both motions.
We perceive no merit to plaintiff's contention that the trial judge erroneously refused to permit him to produce the testimony of two of his witnesses out of turn. The order of proof is generally a matter which is left to the discretion of the trial judge. Handelman v. Handelman, 17 N.J. 1, 9 (1954). We are satisfied that such discretion was not abused here. The witnesses in question were fellow employees who were called for the purpose of establishing plaintiff's employment and physical condition prior to and following the accident. The suggestion is now made that they were not later produced because it was impossible to do so. If such was the case, it was not brought to the attention of the trial judge. On the contrary, the court was advised that they were being called out of turn "to save as much time as possible." There was nothing before the court to indicate that they could not be called later, and proof is lacking that they were not thereafter available.
Plaintiff next contends that the trial judge erroneously instructed the jury as to the damages allowable for aggravation, citing Dalton v. Gesser, 72 N.J. Super. 100 (App. Div. 1962), and McCray v. Chrucky, 66 N.J. Super. 124 (App. Div. 1961). The judge charged:
"Now, I have been asked by the plaintiff to make certain charges to you. No. 1, I will charge you in a modified form.
If you find for the plaintiff, the plaintiff is entitled to recover damages for all adverse effects upon his wellbeing which were proximately caused by the negligence of the defendant. Such damages include *193 those for the aggravation of a pre-existing condition, injury or disease. If the plaintiff did suffer injuries in the accident of October 9, 1961, which aggravated a condition or conditions resulting either from earlier injuries or pre-existing disease, you may compensate the plaintiff for those injuries to the extent only of the aggravation." (Emphasis added)
Plaintiff's request, referred to by the court, lacked the italicized portion noted above and contained, in lieu thereof, the words "the defendant is not entitled to be relieved of responsibility for such aggravating effect." Plaintiff failed to object to the criticized portion of the charge, or to the court's failure either to charge his request in the words in which it had been submitted, or to charge his remaining request bearing upon the same subject. The only objection was interposed on behalf of defendant.
The purpose of the rule requiring objection to the charge is to alert the trial judge to the asserted error so that he may have an opportunity of correction before the jury retires to deliberate. Gluckauf v. Pine Lake Beach Club, Inc., 78 N.J. Super. 8, 18 (App. Div. 1963). In the absence of timely objection, plaintiff is precluded from questioning the propriety of the charge. R.R. 4:52-1; Dinizio v. Burzynski, 81 N.J. Super. 267 (App. Div. 1963). Thus we may consider it only as plain error cognizable under R.R. 1:5-3(c). However, the matter has not been briefed by plaintiff as plain error, nor has this contention been embraced within the Statement of Questions Involved in his brief, as required by R.R. 1:7-1(c). Brodzinsky v. Pulek, 75 N.J. Super. 40, 44 (App. Div. 1962), certification denied 38 N.J. 304 (1962). Ordinarily, no point will be considered which is not set forth or necessarily suggested in the Statement of Questions Involved. Gibson v. Pennsylvania Railroad Co., 14 N.J. Super. 425, 435 (App. Div. 1951).
In any event, we find no merit to plaintiff's criticism of the charge as plain error. Considered as a whole, it fairly presented the applicable law to the jury. The language of the quoted excerpt is technically correct. While it left *194 something to be desired from the standpoint of clarity and relation to the facts of the case, we are unable to conclude that it resulted in a denial of substantial justice. If plaintiff desired further clarification, it should have been requested. Dinizio, supra, at p. 277.
We next turn to plaintiff's challenge to the refusal of the trial judge to grant his motion for a new trial as to damages or, alternatively, as to all issues. On such a motion the trial judge may not invade the constitutional office of the jury by weighing the evidence and substituting his own judgment. Hager v. Weber, 7 N.J. 201, 210 (1951). He is required to canvass the record to determine whether reasonable minds might accept the evidence as adequate to support the jury's verdict. Kulbacki v. Sobchinsky, 38 N.J. 435, 445 (1962). Only when upon examination the verdict is found to be so contrary to the weight of the evidence as to give rise to the inescapable conclusion that it is the result of mistake, passion, prejudice or partiality, may it be disturbed. Hager v. Weber, supra, at p. 210; R.R. 4:61-1. In reviewing the denial of a motion for a new trial, we may not disturb the action of the trial judge thereon unless it amounted to an abuse of discretion or a manifest denial of justice under the law. Fisch v. Manger, 24 N.J. 66, 80 (1957).
From our independent examination of the record, giving due regard to the findings of the trial judge on the motion, Hartpence v. Grouleff, 15 N.J. 545, 549 (1954), we are satisfied, as was he, that reasonable minds could well accept the evidence as adequate to support the jury's verdict. The principal injuries claimed by plaintiff were an injury to the neck (whiplash) and a low back injury, both of which were claimed by plaintiff to have resulted from the accident in question. Defendant, on the other hand, vigorously denied liability for the low back injury, symptoms of which did not manifest themselves until some time after the accident. As noted, plaintiff, an armored car driver, had been involved in a prior accident (on August 19, 1960) as a result of which he had lost seven weeks from work and had been under the *195 care of a physician for a longer period. In his answers to interrogatories he conceded that he had sustained a low back injury in that accident from which he claimed to have made a full recovery. However, a Dr. Blaker, who had examined plaintiff on September 1, 1961 (presumably at the request of his employer's insurance carrier), testified that he was then told by plaintiff that he had gone to the Industrial Clinic in Philadelphia two days after the first accident because of pain in his lower back, and that plaintiff still complained of some pain in his lower back at the examination.
While Dr. Brown, the orthopedic specialist who treated plaintiff and testified on his behalf, was of the opinion that there was causal connection between the accident in question and the low back condition for which he treated and operated upon plaintiff, he conceded that he had never been advised by plaintiff of his prior accident and that the facts regarding it could play a part in his opinion as to causal relationship.
Whether plaintiff's low back condition resulted from the accident in question, whether it resulted from the prior accident, or whether it represented a condition which was present before either, was a jury question which depended, in great part, upon the credibility of plaintiff himself. It can fairly be said that he was somewhat less than frank, if not evasive, in giving answers to questions concerning his past medical history and treatment. The trial judge concluded, and we agree, that the jury could well have determined that the low back condition was not attributable to the accident. In such case the special damages attributable to plaintiff's other injuries (which had apparently cleared up) would have amounted to approximately $3,000. This would have left $3,500 out of the $6,500 verdict to compensate him for his pain, suffering and temporary disability. Denial of the motion for a new trial did not amount to an abuse of discretion or a manifest denial of justice.
We turn finally to the trial court's denial of plaintiff's motion for a new trial on the ground of newly discovered evidence. The "evidence" is recited in an affidavit by Dr. *196 Brown to the effect that plaintiff's fusion operation, which he had performed, had not been successful because the bone graft had been absorbed. This rendered a further operation necessary, with its consequent additional hospital and medical expenses, and loss of wages.
To justify the setting aside of the verdict of a jury and the granting of a new trial, on the ground stated, the newly discovered evidence must be material, must have been discovered since the former trial, must not have been discoverable in the exercise of due diligence, and must be such as would probably alter the judgment. R.R. 4:62-2; State v. Bunk, 4 N.J. 482 (1950); Hodgson v. Applegate, 55 N.J. Super. 1, 13 (App. Div. 1959), affirmed 31 N.J. 29 (1959). Aside from other considerations, we are unable to conclude that the evidence in question was such as would be likely to change the result of the former trial. It was concerned only with plaintiff's low back condition. As noted above, there was implicit in the jury's verdict a rejection of plaintiff's claim on that score.
However, Dr. Brown's affidavit presents no more than a claimed erroneous prognosis on his part. See Curry v. Thompson, 247 S.W.2d 792, 31 A.L.R.2d 1225 (Mo. Sup. Ct. 1952). A rule which would permit an added increment to a plaintiff in the event that his physician's opinion as to his future progress turns out to be inaccurate would likewise call for a rebate to a defendant in the event that plaintiff's condition improved to a degree greater than estimated by the testifying physician. Plaintiff cites no New Jersey case supporting either proposition but relies upon Bekelja v. James E. Strates Shows, 349 Pa. 442, 37 A.2d 502 (Sup. Ct. 1944); Bousman v. City of Stafford, 71 Kan. 648, 81 P. 184 (Sup. Ct. 1905); and Slage v. Pennsylvania Railroad Co., 212 F. Supp. 741 (N.D. Pa. 1963), affirmed 328 F.2d 775 (3 Cir. 1964). We find none of these to be apposite. In Bekelja, a fracture case, it was discovered after the trial that, in addition to the injuries testified to, plaintiff suffered from a dormant and undiscovered condition which could have been disclosed *197 only by an operation. And in Bousman it was found, following a post-trial operation, that plaintiff had sustained injuries of a character different from those testified to at the trial, whose presence could not have been verified until the operation was performed. In Slage, an F.E.L.A. case, the court was confronted with defendant's refusal to permit its injured employee to return to work after it had offered medical proof that he would be able to resume his job. In apparent reliance on such proof, the jury had rendered a verdict of $25,000 in his favor. In view of defendant's apparent bad faith the trial judge granted a new trial, resulting in a $72,500 verdict which was affirmed on appeal.
Here there was neither bad faith nor mistake as to the condition from which plaintiff was suffering. He relies solely upon the asserted fact that Dr. Brown had testified that the corrective operation was a success, whereas it later developed that it was not. However, our examination of the record indicates that Dr. Brown was not quite as sanguine of the operation's success as would first appear. Keeping in mind that the operation took place in February 1963, we note that at the trial, on June 17, 1963, the doctor testified, under questioning by plaintiff's attorney, as follows:
"Q. Now, Doctor, when you perform this operative procedure, are you certain that the results will be one, that the cement will actually set, that the bone will become fixed, and two, become one joint?
A. Am I actually positive?
Q. Yes.
A. No."
Dr. Brown's last examination of plaintiff prior to trial had been on May 2, 1963. When asked to give his conclusion as of that time, he stated:
"A. My examination at that time was to test for stability of his low back and he was wearing up until that time, a brace with crutches on it. This brace, or a brace similar to it, had crutches which went up to his armpit and had straps to hold them around the shoulders in order to hold him in position while setting was taking place and at that time, in May, we advised that the shoulder straps and the *198 crutches be removed from the brace, which in essence gives him more motion in his back and gives him more freedom and we requested that he return at the end of July for Ferguson technique x-rays to determine whether this graft that we put in is solid or not." (Emphasis added)
It is thus clear that the doctor was not, as yet, certain as to the success of the bone graft.
Aside from the foregoing, we note a number of well reasoned cases in which, contrary to Bekelja and Bousman, applications for a new trial were denied, under somewhat similar circumstances. Eller v. Paul Revere Life Ins. Co., 230 Iowa 1255, 300 N.W. 535 (Sup. Ct. 1942); Van Tinder v. Birmingham Ry., Light & Power Co., 202 Ala. 474, 80 So. 858 (Sup. Ct. 1919); Luzzi v. Priester, 295 S.W. 958 (Tex. Civ. App. 1927). See also Great American Indemnity Company v. Brown, 307 F.2d 306, 309 (5 Cir. 1962); Atlantic Coast Line Railroad Company v. Smith, 107 Ga. App. 384, 130 S.E.2d 355 (Ct. App. 1963).
The granting or denial of a motion for a new trial under R.R. 4:62-2 is a matter addressed to the sound discretion of the court controlled by accepted legal principles, and will not be disturbed in an absence of an abuse of discretion. Hodgson v. Applegate, supra, 31 N.J., at p. 37. Here we find no such abuse. Cf. Hoffman v. Goldfield, 129 N.J.L. 359 (Sup. Ct. 1943); Fulmer v. Equitable Life Assurance Society, U.S., 14 N.J. Misc. 407, 409, 185 A. 474, 476 (Sup. Ct. 1936).
The judgment is accordingly affirmed.