John H. KIRBY, II, and Haysel Kirby, Appellants,

v.

UNITED STATES of America, Appellee.

No. 19077.

United States Court of Appeals Fifth Circuit.

Dec. 13, 1961.

Dougal C. Pope, Cooper K. Ragan, Houston, Tex., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., William B. Butler, U. S. Atty., John H. Baumgarten, Asst. U. S. Atty., Houston, Tex., Edward L. Rogers, Benjamin M. Parker, Attys., Dept. of Justice, Washington, D. C., Woodrow B. Seals, U. S. Atty., Houston, Tex., Harry Baum, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before TUTTLE, Chief Judge, and HUTCHESON and JONES, Circuit Judges.

TUTTLE, Chief Judge.

This is another of the cases in which the owner of a patent who transfers something less than all the rights owned under the patent seeks to treat the income he receives from the licensee as capital gains under the provisions of Section 1235 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1235 and Section 117 (q) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 117(q).[1]

---

1. Sec. 1235. "Sale or exchange of patents
   "(a) General.—A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments in consideration of such transfer are—
   "(1) payable periodically over a period generally coterminous with the transferee's use of the patent, or
   "(2) contingent on the productivity, use, or disposition of the property transferred."
   Section 117(q) I.R.C.1939 is identical with the foregoing.

The taxes here in question are for the years 1953 and 1954. The taxpayer and his wife filed joint returns and will be referred to herein as the taxpayer.

The taxpayer invented and patented a magnetic fishing tool device useful in the oil drilling industry. He and an employee organized a corporation, K & G Oil & Tool Service Co., Inc., to which taxpayer granted and conveyed a license for "the sole and exclusive right to manufacture, lease and let throughout the United States and the Dominion of Canada * * the magnetic fishing tool or improvements thereto * * *". The agreement further provided, however:

> "3. Licensee shall under no conditions sell any of said Magnetic Fishing Tools which it may manufacture under the terms hereof but such Magnetic Fishing Tools shall be leased or rented by it on a per job basis to its customers * * *:"

The Commissioner of Internal Revenue disallowed the capital gains treatment claimed by the taxpayer as to the income he received by way of royalties under this agreement for the years 1953 and 1954. After paying the taxes the taxpayer filed a suit for refund which was tried by the District Court without a jury. The trial court considered the case on the pleadings, depositions, and oral testimony and, based on a finding that the retention by Kirby, the taxpayer here, of the right to manufacture the patented articles for sale was a "substantial right," held that, therefore, the transfer made by the taxpayer was not a transfer "of property consisting of all substantial rights to a patent," as required under Section 1235 and its predecessor, Section 117(q).

It is undisputed, although the taxpayer claims that the evidence was irrelevant as to the issue before the trial court, that the taxpayer made sales of the tools in 1954 for foreign use and that during the years 1955 through 1958 substantial profits were made from sales of the device manufactured in the United States and sold for foreign use. For the years 1956, 1957 and 1958 such sales produced substantially more net profit than the royalties received from K & G.

█ Appellant contends that the contract did not authorize the manufacture by Kirby for sales in the United States, since, he says, the license gave to K & G "the sole and exclusive right to manufacture, lease and let throughout the United States and the Dominion of Canada, subject to the terms and conditions hereinafter set out. * * * " The taxpayer complains that the trial court, while not construing the contract as giving Kirby the right to manufacture and sell in the United States, nevertheless held that it could properly consider the fact that Kirby actually did do so to his substantial profit in determining whether the license constituted a transfer of all substantial rights to the patent.

As we construe the contract as a whole, we are compelled to find that the contract did not grant to the licensee the sole and exclusive right to manufacture in the United States, but rather that it granted to the licensee the sole and exclusive right to manufacture only for the purpose of leasing throughout the United States. This necessarily follows from the language of the contract which makes the right "to manufacture, lease and let throughout the United States and the Dominion of Canada" *"subject to the terms and conditions hereinafter set out."* (Emphasis added.) The provisions of Paragraph 3 of the agreement impose the very strict condition that "licensee shall under no conditions sell any of said magnetic fishing tools which it may manufacture under the terms hereof, but such magnetic fishing drills shall be leased or rented by it. * * *" Moreover, it is significant that the paragraph of the contract touching on the royalties to be paid speaks only in terms of gross rentals. Paragraph 2 says: "Licensee shall pay to the Licensor as a license fee upon every magnetic fishing tool *manufactured, leased and let* by the licensee the following sums: * * *". (Emphasis added.) The use of the words, "manufactured, leased and let" clearly demonstrates that it is the manufacturing for

leasing or letting that is the right granted under the license and not the separate right to manufacture for all purposes. Without the privilege of selling the manufactured article, a privilege which is denied to the licensee under paragraph 3, there remains no value in the hands of the licensee except the right to manufacture for lease to others.

█ We think, therefore, that, properly construed, this contract was one whereby the patentee, the taxpayer here, retained to himself the right to manufacture for sale both in the United States and Canada and abroad. Under this construction of the contract the taxpayer can not successfully contend that the right retained by the taxpayer has not been demonstrated to be a substantial right. We recognize, of course, and in fact the Internal Revenue Regulations issued under the appropriate section of the statute required, that "the term 'all substantial rights to a patent' means all rights which are of value at the time the rights to the patent are transferred." Treas. Regs. 1954 Code: Sec. 1.1235–2. Definition of Terms * * * paragraph (b).

The appellant relies strongly on our earlier case of Lawrence v. United States, 5th Cir., 242 F.2d 542, a case which on its facts bears a strong resemblance to the one now before us. The vital distinction between the cases, however, is that in the Lawrence case the jury found that the retention of the right to sell was not a substantial right. That finding was based on testimony to the effect that neither party to the contract considered the right to sell a valuable right. We there said: "What is 'substantial' often becomes a factual question to be decided according to the facts and circumstances of each case and the peculiarities inherent in each patent." 242 F.2d 542 at page 545.

In the case before us, to the contrary, the trial court on more than adequate evidence has determined that the right to manufacture and sell the patented article is a substantial right. We have carefully reviewed the earlier decisions by this court, including Allen v. Werner, 5th Cir., 190 F.2d 840, Bannister v. U. S., 5th Cir., 262 F.2d 175, as well as the Lawrence case, supra, and conclude that under the recognized principles, the trial court properly held that the transfer here did not convey out of the patentee "all substantial rights" owned by him under the patent.

The appellant complains further that the trial court abused its discretion in refusing to grant appellant a new trial and in failing to allow appellant to take additional testimony.

The principal ground for his motion for a new trial is his contention that proof could be adduced, if permitted by the trial court, to show that the patented devices sold abroad which the court had found to be "manufactured in the United States" were not in fact manufactured in this country, but were assembled in some foreign country in each instance. The appellant claims that until such assembly there would be no infringement of a right owned by the patentee; that such completion in a foreign country would be permitted to anyone so far as the United States patent is concerned, and therefore what was actually done by the appellant to earn the profits from its foreign sales was not done in the exercise of a substantial right retained by him under the patent.

█ We think the decision of the trial court in denying the motion must be affirmed for two reasons. In the first place, it was freely conceded by the appellant during the trial that he "manufactured" the device in the United States. No reason is shown in the motion why the conflicting proof now sought to be offered was not offered on the trial of the case. It is plain that the action of a trial court in denying a motion for a new trial is subject to review only for an abuse of discretion. Bowman v. Kerr-McGee Oil Industries, Inc., 5th Cir., 274 F.2d 426. We cannot hold that a trial court abused its discretion in granting a motion for a new trial for the introduction of additional evidence when no reason is given for a failure to pro-

duce the evidence at the time of the trial. The other reason that such a motion could properly be denied by the trial court is that the retention of the exclusive *right* to manufacture the patented device for sale was a substantial right whether or not it was ultimately proved that the particular devices which produced the profits from the foreign sales above referred to were finally assembled in the United States or were finally assembled in some foreign country.[2] Thus, there is no showing in the motion that the result of this trial would be likely to be different if on a new trial the proffered evidence were to be considered by this trial court.

The judgment of the trial court is Affirmed.

2. We do not pass on the taxpayer's legal contention that in the case of a combination patent there is no infringement until all elements are finally brought together in workable shape, and if that is all done in a foreign country after they are all manufactured and shipped from the United States there is no violation of a United States patent. The principal cases relied upon by him in support of this thesis are Radio Corporation of America, et al. v. Andrea—, 2 Cir., 79 F. 2d 627 and Cold Metal Process Company, et al. v. United Engineering & Foundry Co., 3 Cir., 235 F.2d 224. But see the second appearance of Radio Corporation of America v. Andrea, 2 Cir., 90 F.2d 612.