QUICK CHEK FOOD STORES, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. TOWNSHIP OF SPRINGFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued March 3, 1980—Decided July 14, 1980.

*Frank J. Miele* argued the cause for appellant (*Riker, Danzig, Scherer, Debevoise & Hyland,* attorneys; *Frank J. Miele* and *Paul R. Murphy,* on the brief).

*Edward J. Fanning* argued the cause for respondent (*Morley, Cramer, Tansey, Haggerty & Fanning,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

Plaintiff Quick Chek Food Stores sought a declaratory judgment that an ordinance of the Township of Springfield mandating closing hours for businesses in certain parts of the municipality was an unconstitutional exercise of the Township's police power. The trial court in a written unreported opinion rejected the challenge. The Appellate Division affirmed substantially for the reasons set forth in the trial court's opinion. We granted plaintiff's petition for certification. 81 *N.J.* 351 (1979).

At the trial plaintiff produced two witnesses, Robert Hart, plaintiff's vice-president in charge of operations, and Robert Weltchek, a township committeeman. The township engineer, Walter Kozub, testified for the defendant. The only evidence other than the testimony of these witnesses consisted of the zoning map and the ordinance under attack.

A summary of the pertinent evidence is as follows: Plaintiff, a New Jersey corporation, owns and operates a chain of 66 convenience food outlets, 63 of which are in New Jersey. Their business hours extend from 8 a. m. until midnight, though most of their sales occur after 6 p. m. Generally speaking plaintiff selects its locations after making traffic and customer counts at the proposed site. However, no such information was offered with respect to the site in question on Mountain Avenue in Springfield.

After plaintiff filed an application with the Springfield Township Planning Board for site plan approval of a building which was to be constructed for plaintiff's use public opposition developed.[1] This opposition was brought to the attention of the Township Committee which subsequently considered and adopted an ordinance to limit the hours of night operation of commercial establishments.

The ordinance provided that no retail establishments of any nature, other than pharmacies or restaurants, were permitted to conduct business between 9 p. m. and 6 a. m. of the next day in any Neighborhood-Commercial (N–C) zone. Springfield's zoning ordinance provided for four types of residential zones, two industrial, one office and three commercial. The commercial consisted of a highway commercial, a general commercial, and a neighborhood commercial (N–C) zone. There are three small N–C zones in the Township, each abutting residential areas. Three sides of the N–C zone on Mountain Avenue in which plaintiff proposed to locate its store are adjacent to residential zones. Some homes exist within the zone.

The Township Committee's intent in adopting the ordinance was to protect the character of the residential neighborhoods serviced by the stores in the contiguous N–C zones. These zones are located in the midst of the Township which is essentially

---

[1]Under the terms of Quick Chek's lease, dated December 24, 1976, if construction had not been substantially completed within one year, it had the option to terminate the lease, except that the construction period could be extended for an additional year.

residential in character. In this manner the Township sought to prevent, as Committeeman Weltchek testified, "an intrusion on the privacy of these areas, especially in the late hours of the evening." The highway or general commercial establishments which are not subject to the closing hours of the ordinance are located on the outskirts of the Township.

In addition to the Quick Chek store located in the N–C zone, a number of commercial establishments other than pharmacies and restaurants would be affected by the ordinance. Pharmacies were excluded because of emergency needs for medicines and drugs. Since the area's restaurants were small and family oriented and had no liquor licenses, it was believed that customers would be in the process of completing their meals and there would likely be no new business after 9 p. m.

The trial court found that fixing the closing times at 9 p. m. for businesses in the N–C zone because of the surrounding residences enhanced the health, peace and comfort of persons residing in those areas. It held that such a purpose was within the police powers of the municipality and accordingly the ordinance was rationally based and complied with substantive due process. The trial court noted that the ordinance was presumptively valid, that the burden of proof rested upon the plaintiff, and that it accepted the evidence with respect to the intent and purpose of the ordinance.

Before considering the trial court's ruling on the merits, we shall first address a procedural issue. Following the court's decision, the plaintiff moved for reconsideration and amended factfinding. Attached to its motion was an affidavit of plaintiff's president consisting of ten pages detailing numerous facts and contentions. Attached to the affidavit were four exhibits consisting of two diagrams of the area adjoining the Quick Chek location and a list of businesses located there, a schedule of municipal ordinances together with excerpts of certain sections, Quick Chek's lease, and a resolution of the Planning Board.

Plaintiff's counsel stated on oral argument of the motion that it wished the court to consider the additional facts submitted in

the moving papers. Counsel conceded these matters should have been brought to the court's attention at trial. Defendant objected to submission of any additional evidence and the trial court agreed, holding that it was not newly discovered and could have been produced at trial.

The trial court properly rejected the additional information which plaintiff sought to introduce into the record after the trial had concluded and the court had rendered its written opinion. Although labelled a motion for reconsideration and amended factfinding, the motion was in essence one for a new trial to permit the introduction of evidence which plaintiff had failed to produce at trial. R. 4:49–1. This Rule empowers a trial judge on motion served within ten days after the court's conclusions are announced in nonjury actions to open a judgment, if one has been entered, take additional testimony, make new findings and conclusions and direct the entry of a new judgment. However, a litigant does not have an absolute right to have a proceeding reopened to produce additional evidence. It must clearly and convincingly appear that there was "a miscarriage of justice under the law."

When a motion for a new trial is made under R. 4:49–1 to produce additional evidence, such a motion should be granted when that evidence would probably alter the judgment and by due diligence could not have been discovered before the court announced its decision. See *Nieves v. Baran*, 164 *N.J.Super.* 86 (App.Div.1978). These are also among the prerequisites to relief from a final judgment within one year under R. 4:50–1. Under that rule it is well established that it must appear that the evidence would probably have changed the result, that it was unobtainable by the exercise of due diligence for use at the trial, and that the evidence was not merely cumulative. *State v. Speare*, 86 *N.J.Super.* 565, 581–582 (App.Div.1965), certif. den. 45 *N.J.* 589 (1965); *Minter v. Bendix Aviation Corp.*, 26 *N.J. Super.* 268, 271 (App.Div.1953), rev'd on other grounds, 24 *N.J.* 128 (1957); *State v. Hunter*, 4 *N.J.Super.* 531, 536 (App.Div. 1949). These guidelines are equally applicable to motions made within ten days of the court's judgment under R. 4:49–1. These

motions are addressed to the sound discretion of the trial court and will not be disturbed unless that discretion has been clearly abused. See, e. g., *State v. Puchalski*, 45 *N.J.* 97, 107 (1965); *Hodgson v. Applegate*, 31 *N.J.* 29, 37 (1959); *State v. Bunk*, 4 *N.J.* 482, 485 (1950).

[4–7] *R.* 4:49–1 was modeled after Federal Rule of Civil Procedure 59 and it is therefore appropriate for us to consider as a guide the interpretation of the federal rule. *Hodgson v. Applegate*, 31 *N.J.* at 35. Federal Rule 59(a) provides that where there has been a trial without a jury, the court may reopen the judgment and take additional testimony for any of the reasons for which rehearings had been granted in suits in equity in federal courts. The party seeking a new trial on the basis of newly discovered evidence has the burden of showing diligence and that burden is substantial. *Martin v. Klein*, 172 *F.Supp.* 778, 780 (D.Mass.1959). The evidence must be such that it was not discoverable by diligent search at the time of trial. *Moylan v. Siciliano*, 292 *F.2d* 704, 705 (9 Cir. 1961). Moreover, an application to open a judgment to take additional testimony with a possible consequent amendment of findings of fact necessarily invokes a broad judicial discretion. *Kirby v. United States*, 297 *F.2d* 466, 469–470 (5 Cir. 1961); *Welch v. Grindle*, 251 *F.2d* 671, 677 (9 Cir. 1957). Lastly, a trial court's determination not to reopen a judgment and take additional testimony is not to be disturbed except for a clear abuse of that discretion. See *Locklin v. Switzer Bros., Inc.*, 299 *F.2d* 160, 170 (9 Cir. 1961), *cert.* den. 369 *U.S.* 861, 82 *S.Ct.* 950, 8 *L.Ed.2d* 18 (1962); *Kirby*, 297 *F.2d* at 469.

These principles are equally applicable to motions made under *R.* 4:49–1(a) for a new trial based on newly discovered evidence. When applied here, we have no question that the trial court properly denied the motion. Plaintiff offered no reason for failure to produce the evidence at the time of trial. It has not even attempted to make a showing that the evidence was not discoverable or available at trial. Under these circumstances it cannot be said that the trial court abused its discretion in not reopening the case to receive additional evidence.

■ We turn next to the substance of the ordinance. The ordinance in question was enacted by the Township under its authority to make ordinances for the "order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants . . . ." *N.J.S.A.* 40:48–2. This express delegation of police power to a municipality, *Hudson Circle Servicenter, Inc. v. Kearny,* 70 *N.J.* 289, 298 (1976), is buttressed by the constitutional provision that "any law concerning municipal corporations . . . shall be liberally construed in their favor. *N.J.Const.* (1947), Art. IV, § VII, par. 11; *Hudson Circle Servicenter, Inc.,* 70 *N.J.* at 298; *Divan Builders, Inc. v. Wayne Tp. Planning Board,* 66 *N.J.* 582, 595 (1975).

■ Moreover, ordinances are presumed valid and reasonable. The burden of proof to establish that they are arbitrary and unreasonable rests on the party seeking to overturn them. *Hutton Park Gardens v. West Orange Town Council,* 68 *N.J.* 543, 564 (1975). "The presumption may be overcome only by a clear showing that the local ordinance is arbitrary or unreasonable." *Hudson Circle Servicenter, Inc.,* 70 *N.J.* at 298–299 (citations omitted). The underlying policy and wisdom of ordinances are the responsibility of the governing body, *Lehrhaupt v. Flynn,* 140 *N.J.Super.* 250, 266 (App.Div.1976), aff'd o. b. 75 *N.J.* 459 (1978); *Little Falls Tp. v. Husni,* 139 *N.J.Super.* 74, 80 (App.Div.1976), and if any state of facts may reasonably be conceived to justify the ordinance, it will not be set aside. *Hutton Park Gardens,* 68 *N.J.* at 564–565.

The thrust of the plaintiff's argument is that a municipality's power to fix hours during which retail establishments may be closed is restricted to those businesses which are inherently inimical to the public health, safety, welfare or morals and that the ordinance in question is not reasonably calculated to fulfill a legitimate legislative objective. The argument misconceives the nature and purpose of the ordinance and the power delegated to municipalities.

█ The power to adopt ordinances for the public health, safety and welfare of the municipality and its inhabitants is coterminous with the police power of the State Legislature. Thus municipalities may enact regulatory ordinances on any subject matter of local concern which is reasonably related to a legitimate object of public health, safety or welfare, see *N. J. Builders Ass'n v. E. Brunswick Tp.*, 60 *N.J.* 222, 227 (1972); *Summer v. Teaneck Tp.*, 53 *N.J.* 548, 552–553 (1969), provided the State has not preempted the field. *Overlook Terrace Management Corp. v. W. New York Rent Control Bd.*, 71 *N.J.* 451, 460–462 (1976); *Summer*, 53 *N.J.* at 554–555; *Lehrhaupt*, 140 *N.J.Super.* at 259. See generally *Hudson Circle Servicenter, Inc.*, 70 *N.J.* at 299 n.6, for a list of cases illustrative of the scope of the municipal police power.

█ The subject matter of the police power includes the authority to restrict business hours of retail establishments. Thus ordinances restricting hours of particular businesses have been consistently upheld. See, *e. g., Dock Watch Hollow Quarry Pit, Inc. v. Warren Tp.*, 142 *N.J.Super.* 103, 123 (App.Div.1976), aff'd o. b. 74 *N.J.* 312 (1977) (quarry); *Little Falls Tp. v. Husni*, 139 *N.J.Super.* 74 (App.Div.1976) (laundromat); *Cranberry Lake Quarry Co. v. Johnson*, 95 *N.J.Super.* 495, 512, certif. den. 50 *N.J.* 300 (1967) (quarry); *Starkey v. Atlantic City*, 132 *N.J.L.* 27 (Sup.Ct.1944) (drug store); *Spiro Drug Service, Inc. v. Union City*, 130 *N.J.L.* 1 (Sup.Ct.1943), aff'd o. b. 130 *N.J.L.* 496 (E. & A. 1943) (drug store); *Richman v. Newark*, 122 *N.J.L.* 180 (Sup.Ct.1939) (grocery store); *Wagman v. Trenton*, 102 *N.J.L.* 492 (Sup.Ct.1926) (auction sale of jewelry); *Mister Softee v. Hoboken*, 77 *N.J.Super.* 354, 370–375 (Law Div. 1962) (peddler prohibited from selling near schools between 8:30 a. m. and 3:30 p. m. and in residential zones after 9 p. m.) (dictum). *Cf. Vornado, Inc. v. Hyland*, 77 *N.J.* 347 (1978) (upholding Sunday Closing Law, *N.J.S.A.* 2A:171–5.8 *et seq.* pursuant to which certain commercial businesses were forced to close on Sundays); *Amodio v. W. New York*, 133 *N.J.L.* 220 (Sup.Ct.1945) and *Falco v. Atlantic City*, 99 *N.J.L.* 19 (Sup.Ct.1923) (hours regulation of barber shops where expressly authorized by state statute).

However, an ordinance regulating business hours must tend to benefit the public health, morals, safety or general welfare to pass constitutional muster under the police power. 7 *McQuillan, Municipal Corporations* (3 ed. Latta 1968), § 24.330 at 222. Further, a police regulation may not impose an unnecessary, unreasonable and arbitrary restriction having no relation to the public interest. See *Hart v. Teaneck Tp.*, 135 *N.J.L.* 174 (E. & A. 1947) (restricting hours of lunch wagons, but not other restaurants); *Dock Watch Hollow Quarry Pit, Inc.*, 142 *N.J.Super.* at 122 (although limiting daily operations to nine hours is valid, restriction of that period to certain time of the day is arbitrary in view of industry practice); *Crawford's Clothes, Inc. v. Newark*, 131 *N.J.L.* 97 (Sup.Ct.1944) (restricting hours of retail stores excluding ten exceptions resulting in arbitrary discrimination).

We have no hesitancy in finding that the trial court was justified in holding that limitations upon hours of service in commercial establishments located in a residential milieu is a regulation related to the health, peace and comfort of those surrounding homes. Doubtless such a regulation furthers the public health and welfare of the residential community. We acknowledged in *Berger v. State*, 71 *N.J.* 206 (1976), that a municipality may properly endeavor "to secure and maintain 'the blessings of quiet seclusion' and to make available to its inhabitants the refreshment of repose and the tranquillity of solitude." *Id.* at 223, quoting *Village of Belle Terre v. Boraas*, 416 *U.S.* 1, 9, 94 *S.Ct.* 1536, 1541, 39 *L.Ed.2d* 797, 804 (1974) (per Douglas, J.). See also *State v. Baker*, 81 *N.J.* 99, 106 (1979). Noise created in the still of the night may be a disturbing distraction affecting the sleep and rest of people in their homes. The U. S. Department of Housing and Urban Development (HUD) has found "that noise is a major source of environmental pollution which represents a threat to the serenity and quality of life in population centers" and cautioned that "[p]articular attention should be paid to fostering land utilization patterns for housing and other municipal needs that will separate uncontrollable noise sources from residential and other noise-sensitive

areas." U. S. Dep't of Housing and Urban Development, Circular No. 1390.2, Noise Abatement and Control 1 (1971). See also *N.J.S.A.* 40:48–1(8) authorizing a municipality to adopt an ordinance to prevent disturbing noise. It is not an appropriate judicial function for us to question the wisdom of the Township Committee in enacting this ordinance under its general police power authority; nor to determine whether its aim could have been accomplished in some other manner. Plaintiff has failed to meet its burden of clearly demonstrating that the ordinance is arbitrary and unreasonable and does not advance the protection of the residential character of the area adjacent to the N–C zone.

Plaintiff has substantially relied for its position upon *Fasino v. Montvale Borough*, 122 *N.J.Super.* 304 (Law Div. 1973), aff'd o. b. 129 *N.J.Super.* 461 (App.Div.1973). The Borough of Montvale ordinance regulated closing hours of every retail business within the municipality, except purveyors of food for consumption on the premises. The trial court found that the ordinance was overbroad and that ordinances regulating closing hours for specific businesses had been upheld where there was a relation between the public health or safety and a danger or hazard of the operation. That case did not concern the effect of retail businesses nestled in a residential neighborhood. *Fasino*, 122 *N.J.Super.* at 308, 311, citing approvingly *Barbier v. Connolly*, 113 *U.S.* 27, 5 *S.Ct.* 357, 28 *L.Ed.* 923 (1885), and *Soon Hing v. Crowley*, 113 *U.S.* 703, 5 *S.Ct.* 730, 28 *L.Ed.* 1145 (1885), which upheld ordinances of the City of San Francisco closing laundries located in certain districts at night because of the danger to buildings in those districts from the open fires used at that time in the laundry business. These decisions support the proposition that the location of businesses may be such that their hours of operation may justifiably be limited to serve the public good. Thus, though we do not pass upon the soundness of *Fasino*, it is distinguishable on the ground that a difference exists between a general closing law applicable to all retail establishments in a municipality which may be arbitrarily overbroad insofar as its purposes are concerned and one that is reasonably tailored to meet a particular situation.

 Plaintiff also argues that it is being discriminated against because drug stores, restaurants, and non-retail establishments are not subject to the ordinance's closing hours. The short answer to this contention is that plaintiff has produced no proof to overcome the presumption of validity, to dispel any conceivable state of facts affording a just ground for the action stated or to establish that the classification does not rest on some ground or difference related to the object of the legislation. There was evidence that pharmacies were excluded because of the public need for pharmacies to remain open longer hours. As for restaurants the record indicates that their business which is of a neighborhood type is not patronized by new customers after 9 p. m. and they may properly complete service to those being served at that time. Lastly there was no showing that any non-retail establishments existed in the neighborhood commercial zone, and, if so, that their hours extended beyond 9 p. m. In this respect of course an ordinance is not invalid "because it could have done more to combat the evils which it seeks to address." *Hudson Circle Servicenter, Inc.*, 70 *N.J.* at 316 (citations omitted).

Affirmed.

PASHMAN, J., dissenting.

I respectfully dissent. Less than one year ago, this Court stated the constitutional limits of a municipality's power to regulate the use of land as follows:

> In order to be valid, [the] regulation must both represent a reasonable exercise of the police power and bear a real and substantial relation to a legitimate municipal goal. Moreover, the regulation may "not exceed the public need or substantially affect uses which do not partake of the offensive character of those which cause the problem sought to be ameliorated." *Kirsch Holding Co. v. Borough of Manasquan,* 59 *N.J.* 241, 251 (1971). See, e. g., *Pascack Ass'n, Ltd. v. Mayor & Coun. of Washington Tp.,* 74 *N.J.* 470, 483 (1977); *Berger v. State,* 71 *N.J.* 206, 223–224 (1976); *J. D. Construction Corp. v. Board of Adj. of Freehold Tp.,* 119 *N.J.Super.* 140, 145 (Law Div.1972). [*State v. Baker,* 81 *N.J.* 99, 105–106 (1979)]

In upholding Springfield's ordinance as a valid exercise of the police power, the majority has completely ignored this well-settled principle of municipal law. Plaintiff's claim is that the

closing hour restriction "substantially affects uses which do not partake of the offensive character" of the problems of noise and traffic control which the ordinance seeks to solve. This claim has been effectively drowned out by the repeated recitation of an ordinance's presumption of validity.

If the majority had examined the alternatives to the Springfield ordinance—a task which *Baker* requires it to perform, see 81 *N.J.* at 109–111—it would have concluded that an ordinance regulating the closing hours of retail businesses is not a valid means for reducing noise where completely adequate alternatives exist. Instead, the majority fails to consider the existence of other township ordinances covering the same "intrusions" which allegedly necessitate regulation of closing hours. Both the township and the majority should look to those regulations to meet the need which the ordinance attempts to fulfill in an arbitrary fashion.

"[M]unicipal enactments may not transcend public need and must bear a real and substantial relationship to the objectives of the ordinance." *Hudson Circle Servicenter, Inc. v. Kearny,* 70 *N.J.* 289, 301 (1976). Applying this constitutional standard prevents the presumed validity of municipal ordinances, *Hutton Park Gardens v. West Orange Town Council,* 68 *N.J.* 543, 564 (1975), from becoming conclusive without further inquiry. The traditional presumption should not divert a court from fully assessing an attempted exercise of the police power. Although laws are to be liberally construed in favor of municipalities, *N.J.Const.* (1947) Art. IV, § VII, par. 11, courts cannot uphold municipal restrictions which "transcend public need" simply because they take the form of a police regulation.

It is apparent that the trial court treated the presumption of validity as a conclusion. After reciting the rule that municipal regulations must be reasonable, it summarily held that

[a]ny reasonable limitations upon the hours of service is a regulation concerning the health and peace and comfort of the surrounding residential areas and is within the domain of the police power.

The majority's affirmance binds the power of judicial review with this inadequate reasoning, which relies on distinctions

without a difference and ignores differences where they do exist. Such analytical acrobatics would not be necessary if the requisite "real and substantial relation" to the public need were present.

The "public need" extends to the health, safety and general welfare of the community. See *N.J.S.A.* 40:48–2. While this concept is very broad, see, *e. g., Dome Realty, Inc. v. City of Paterson,* 83 *N.J.* 212 (1980); *Hutton Park Gardens, supra; Inganamort v. Borough of Fort Lee,* 62 *N.J.* 521, 536 (1973), it is not without limits. See, *e. g., Hudson Circle,* 70 *N.J.* at 312 (finding invalid requirement that parking lot be paved). The extent of the public need in any given situation depends upon the potential harm of the activity sought to be regulated. Thus, when a municipality seeks to limit the hours of operation of a business, both the type of activity and its location are factors to be assessed in determining the limits of the police power.

As a class, retail establishments do not pose any danger to public health, safety or welfare. In a certain setting, however, specific types of businesses may present a particular problem which may properly be alleviated by municipal regulation. See generally *Fasino v. Borough of Montvale,* 122 *N.J.Super.* 304, 308 (Law Div.1973), aff'd o. b. 129 *N.J.Super.* 461 (App.Div. 1973). For example, drug store hours have been regulated during wartime to protect the public from the dangers of service by pharmacists who were overworked as a result of a labor shortage. See *Starkey v. Atlantic City,* 132 *N.J.L.* 27 (Sup.Ct. 1944); *Spiro Drug Service v. Union County,* 130 *N.J.L.* 1 (Sup. Ct.1943), aff'd, 130 *N.J.L.* 496 (E & A 1943). Jewelry auctions have been validly prohibited between the hours of 6 p. m. and 8 a. m. to protect customers from fraud by nighttime use of artificial lights. See *Wagman v. Trenton,* 102 *N.J.L.* 492 (Sup. Ct.1926). Courts have also upheld restrictions on the operating hours of quarries to provide neighboring residents respite from noise. See *Dock Watch Hollow Quarry Pit v. Tp. of Warren,* 142 *N.J.Super.* 103, 121–123 (App.Div.1976), aff'd o. b., 74 *N.J.* 312 (1977); *Cranberry Lake Quarry Co. v. Johnson,* 95 *N.J.Super.* 495, 512 (App.Div.1967), certif. den., 50 *N.J.* 300 (1967). Finally, the hours of operation of laundromats have been restricted to

protect the public from fire hazards and increased criminal activity. See *Tp. of Little Falls v. Husni*, 139 *N.J.Super.* 74 (App.Div.1976).[1] Unlike the present situation, each of these cases reveals that the "specific businesses that were regulated presented a clear danger to the public health or safety or both." *Fasino*, 122 *N.J.Super.* at 309.[2]

No one would dispute that the operation of any retail establishment has impact on the public welfare. Although the majority's analysis goes no further than this proposition, judicial inquiry may not end there. The dispositive question is whether that impact creates a public need sufficient to regulate or restrict business activity. Here the regulation is claimed necessary to avoid intrusion on the privacy of residential areas abutting the neighborhood-commercial zones. The asserted harm is the disturbance of the peace and quiet of the community during nighttime hours. This is the same interest sought to be

---

[1]The majority also relies on *Amodio v. West New York*, 133 *N.J.L.* 220 (Sup.Ct.1945), and *Falco v. Atlantic City*, 99 *N.J.L.* 19 (Sup.Ct.1923), for the proposition that municipalities may regulate the hours of operation of barber shops by virtue of the authorization contained in *N.J.S.A.* 40:52–1(*l*). *Ante* at 448. The validity of such regulation, which has never been passed upon by this Court, is questionable. In the more recent case of *Tomasi v. Tp. of Wayne*, 126 *N.J.Super.* 169 (Law Div. 1973), the court struck down an ordinance requiring barber shops to close at 6:30 p. m. The court held that as applied to present day conditions, the legislative grant of authority in *N.J.S.A.* 40:52–1(*l*) to regulate the opening and closing hours of barber shops went beyond the public need for sanitation or barber competency. *Id.* at 178, 313 *A.2d* 229. The *Tomasi* decision is in accord with the majority view. Most states have found limits on barber shop opening and closing hours to be invalid. See, *e. g.*, *City of Miami v. Shell's Super Store, Inc.*, 50 *So.2d* 883 (Fla.Sup.Ct.1951) (*en banc*); *In re Opinion of the Justices*, 337 *Mass.* 796, 151 *N.E.2d* 631 (Sup.Jud.Ct.1958); *People ex rel. Pinello v. Leadbitter*, 301 *N.Y.* 695, 95 *N.E.2d* 51 (Ct.App.1950).

[2]*Vornado, Inc. v. Hyland*, 77 *N.J.* 347 (1978), and *Richman v. Newark*, 122 *N.J.L.* 180 (Sup.Ct.1939), cited by the majority, *ante* at 448, both involve Sunday closing laws. The validity of such restrictions—which I continue to question, see *Vornado*, 77 *N.J.* at 365–370 (Pashman, J., dissenting)—rests not on a danger or threat posed by a particular type of business operation but on the legislative determination that "a day of rest" is needed. This determination, and the legislation which is based on it, stands on an entirely different footing than the ordinance involved in the present case.

furthered by the closing law held invalid in *Fasino*. While not rejecting *Fasino* as wrongly decided, the majority attempts to distinguish it on the basis of the territorial reach of the two ordinances. *Ante* at 450. The majority observes that in *Fasino* the ordinance affected the entire municipality, while here only small areas of the town are involved.[3] Although the location of the restricted activity may be important in assessing the extent of public need for regulation, it is not the only factor for consideration. Virtually any limitation on the operating hours of businesses bordering residential areas would enhance peace and quiet in some small measure. The flaw in the majority's position is its failure to recognize that the infirmity in a general closing law does not stem solely from its geographic scope. Both a general law and Springfield's ordinance are invalid because they attempt to prevent objectionable conduct which might result from late night retail operations by restricting the entire operation rather than the objectionable conduct. Both, therefore, transcend public need.

The intrusion that the ordinance seeks to avoid is the excessive noise which may result from late night patronage of plaintiff's store. I join in the majority's recognition that control of noise pollution is a legitimate purpose of a municipal ordinance. See *ante* at 449–450. The Legislature has specifically authorized municipalities to regulate disturbing noises. *N.J.S.A.* 40:48–1(8). No amount of liberal construction, however, should convert this delegation into a license to control noise indirectly by closing retail establishments in certain areas.[4] Regulating the hours of operation of a quarrying business, see *Dock Watch Hollow Quarry Pit, supra,* or even a coin operated car wash, see

---

[3]Despite its description of the N–C zones as "nestled in a residential neighborhood," *ante* at 450, the broad sweep of the majority's reasoning would support extension of Springfield's ordinance to all zones bordering on residential areas.

[4]Like the majority, I find no infirmity arising from the ordinance being in substance an exercise of the zoning power, although denominated as an exercise of the general police power. *Cf. State v. C. I. B. International,* 83 *N.J.* 262 (1980); *Donadio v. Cunningham,* 58 *N.J.* 309, 326–327 n.8 (1971).

*People v. Raub*, 9 Mich.App. 114, 155 *N.W.*2d 878 (1968), is clearly more suitably tailored to the prevention of disturbing noises. The present case, however, is not a direct attempt to control the noise of the business—it is an indirect attempt to control the noise of customers. Plaintiff will not be creating a disturbance by operating its business; therefore, the municipality cannot shut down that business to eliminate disturbances created by others where less intrusive alternatives exist. See *State v. Baker*, 81 *N.J.* at 106–108; *Kirsch Holding Co.*, 59 *N.J.* at 253–254; *Larson v. Borough of Spring Lake Heights*, 99 *N.J.Super.* 365 (Law Div.1968).

The majority's validation of Springfield's closing ordinance reflects a total failure to consider existing less restrictive alternatives which are more appropriately tailored to noise control. See *State v. Baker*, 81 *N.J.* at 111; *cf. Husni, supra* (ordinance required laundromats to close from 11 p. m. to 7 a. m. *or* to have an attendant on duty). The municipality has already enacted ordinances prohibiting the intrusions Quick Chek's operations are claimed to present.[5] Review of these regulations reveals ample provision for every type of objectionable activity which might accompany Quick Chek's operations.[6] Under these circumstances, the closing hour ordinance is "palpably excessive as

---

[5]Since municipal ordinances may be judicially noticed, *Evid.R.* 9(2)(a), the trial court should have taken them into consideration despite any untimeliness of plaintiff's attempt to place them before the court. See *ante* at 446.

[6]Springfield's general police regulations provide in part:

3–2.2 * * * No person shall loiter in a public place in such manner as to:

a. Create or cause to be created a danger of a breach of the peace.

b. Create or cause to be created any disturbance or annoyance to the comfort and repose of any person.

* * * * * * * * *

3–3.1 * * * It shall be unlawful for any person to make, continue or cause to be made or continued, any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety or others within the limits of the township.

Other provisions of Springfield's zoning ordinance also afford protection against intrusions by light or noise:

a 'requirement necessary to minimize the offensive character of the conduct to be regulated.'" *Larson*, 99 *N.J.Super.* at 374 (quoting *State v. Mundet Cork Corp.*, 8 *N.J.* 359, 369 (1952), *cert.* den., 344 *U.S.* 819, 73 *S.Ct.* 14, 97 *L.Ed.* 637 (1952)).

Since the ordinance clearly "transcend[s] public need," *Hudson Circle*, 70 *N.J.* at 301, I would hold it invalid under Article I, paragraphs 1 and 5 of the State Constitution. I therefore respectfully dissent.

---

17–7.11 *Outdoor Lighting, All Districts.* In any district where the installation of outdoor flood or spot lighting is intended, such lighting shall be designed so that it will not shine directly or indirectly upon any neighboring property.

\* \* \* \* \* \* \* \*

17–8.3(e) *Buffer Areas, Required.*

1. A ten foot deep buffer area shall be maintained between any parking or loading areas located in the O, N–C, H–C, G–C, I–20 or I–40 Districts which abut S–120, S–75, S–0 or M–R Residence Districts. The buffer strip shall separate the above-mentioned districts by means of a six foot high fence of close woven wood or other appropriate material and the planting of an appropriate six foot living fence of arborvitae or Canadian hemlock spaced five feet on center to create an effective screening. Fencing shall be located in the buffer area in such a manner that planting will be provided facing residential properties.

\* \* \* \* \* \* \* \*

3. Any main wall of a building to be erected in such nonresidential district abutting any residential district shall not be closer than 50 feet from any residential district line or any lot line of any lot used for exclusively residential purposes.

17–8.4(d) *General Sign Provisions.*

\* \* \* \* \* \* \* \*

3. All illuminated signs shall be either indirectly lighted or of the diffused lighting type. No sign shall be lighted by means of flashing or intermittent illumination. All lights used for the illumination of any use or building or the areas surrounding them or for the illumination or display of merchandise or products of business establishments shall be completely shielded from the view of vehicular traffic using the road or roads abutting such business properties. Floodlights used for the illumination of the premises or of any sign thereon, whether or not such floodlights are attached to or separate from the building, shall not project above the highest elevation of the front wall of the building or more than 18 feet above the street level of the premises, whichever is less. Where permitted, illuminated signs shall be so arranged as to reflect the light and glare away from adjoining premises in any residential district or adjoining highway.

458

*For affirmance* —Chief Justice WILENTZ and Justices SUL-LIVAN, SCHREIBER and POLLOCK—4.

*For reversal* —Justice PASHMAN—1.