LARIO, J.T.C.
This is a consolidated motion filed by all plaintiffs for reconsideration of summary judgments entered by this court dismissing all plaintiffs’ complaints. Plaintiffs, 14 taxpayers, originally filed complaints attacking determinations of defendant, Director, Division of Taxation (Director) whereby he denied their respective claims for deductions under the New Jersey Corporation Business Tax Act (CBT), N.J.S.A. 54:10A-1, et seq.
These complaints were assigned to Judge Richard M. Conley for hearing and determination. By reason of identity of legal issues, they were consolidated for hearing and since the material facts were not in dispute, motions for summary judgment were filed by all parties. In support of their respective motions, comprehensive pleadings, including thousands of pages of briefs, transcripts of depositions and affidavits were submitted by all parties and oral arguments were presented.
On September 28, 1984, Judge Conley issued his decision granting defendant’s motion for summary judgment in each case affirming the deficiency assessments imposed against each of the plaintiffs. Amerada Hess Corp. v. Taxation Div. Director, 7 N.J.Tax 51 (Tax Ct 1984). Judgments to that effect as to all assessments levied for the taxable year 1980 were entered on October 5, 1984. Subsequently, corrected judgments were entered on October 16, 1984 as to five of the plaintiffs whose assessments for the taxable year 1981 were also contested.
Thereafter, within the time period permitted by our rules, all plaintiffs joined in motions for reconsideration. Shortly after rendering his decision, Judge Conley resigned as a judge of this *279 court to resume the private practice of law and these motions were assigned to me to hear and determine.
In its brief opposing plaintiffs’ motions the Director agrees with a request contained in plaintiffs’ brief that the contested assessments in docket nos. CB 075B-83 (Conoco, Inc.) and CB 069B-83 (Atlantic Richfield Company) (tax year 1980 only) were reductions of refund claims, not deficiency assessments, and he joins in plaintiffs’ request that these judgments be corrected accordingly. This motion is granted and the Clerk of the Tax Court is directed to issue corrected judgments.
Plaintiffs filed their motions pursuant to R. 4:49-1, R. 4:49-2, R. 4:50—1(f), R. 8:7(a) and R. 8:10, for the following relief: (1) reconsideration of the opinion of the Tax Court dated September 28, 1984, denying the motions of plaintiffs for summary judgment, granting the motion of defendant for summary judgments and dismissing the complaints of plaintiffs; (2) vacation of the judgment and corrected judgments dated October 5,1984 and October 16, 1984 respectively, entered pursuant thereto, affirming the 1980, and, as applicable, 1981 assessments, and dismissing the complaints of plaintiffs; and, (3) entry of summary judgments in favor of plaintiffs for the relief requested in their respective complaints.
In his answering brief, defendant denies that R. 4:50—1(f), R. 8:7(a) and R. 8:10 are applicable for this type of motion. At oral argument plaintiffs agreed with Director’s contentions and stated that they were relying upon R. 4:49-1 and -2 for the relief requested and that the other rules cited were not applicable.
R. 4:49-2 deals with a motion to “alter or amend” a judgment and it apparently covers cases such as here where no trial was held and since it sets forth no separate substantive standards, it is presumed that its standards are identical to those applicable to R. 4:49-1.
R. 4:49-1 specifies that in an action tried without a jury, on motion, the trial judge may open the judgment, take additional testimony, amend findings of fact and conclusions of law and *280 direct the entry of judgment. It further provides: “The trial judge shall grant the motion if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law.” Ibid.
Although the “miscarriage of justice” standard refers to jury trials, it is clear that the standard also applies to motions in nonjury cases. Quick Chek Food Stores v. Springfield Tp. 83 N.J. 438, 445, 416 A.2d 840 (1980). Under this rule motions “are addressed to the sound discretion of the trial court and [that judgment] will not be disturbed unless that discretion has been clearly abused.” Id. at 445-446, 416 A.2d 840.
The Supreme Court in Quick Chek also made it clear that the parallel federal rule {Fed.R.Civ.P. 59) may be considered as a guide for interpreting R. 4:49-1. Id. at 446, 416 A.2d 840. The Federal rule mandates that a motion for a new trial should be premised only upon a “manifest error of law”, “manifest error of fact”, or “newly discovered evidence.” II C. Wright and A. Miller, Federal Practice and Procedure (1980) § 2804; Pioneer Paper Stock Co. v. Miller Transport Co., 109 F.Supp. 502, 504 (D.N.J.1983).
From an examination of the reasons advanced in support of their motions it appears that plaintiff’s main objections are their dissatisfaction with the judge’s written opinion. Most of their arguments, raised in their supporting briefs and presented orally, are directed against the opinion’s content, brevity and failure to discuss certain issues and not against the judge’s conclusion and final judgment. They complain of the court’s alleged failure to comment upon most of the evidence submitted and to address many of the arguments presented.
Plaintiffs advise that regardless of which party prevails in this court, an appeal will be taken to the Appellate Division and probably will be further pursued to the Supreme Court. One of the objections, in support of this motion, raised by one plaintiff is that although their positions were fully presented and exhaustively briefed, each was not specifically discussed and *281 commented upon in the opinion; and, that on appeal, this failure is not fair to the plaintiffs nor to the Appellate Division. The basis for this position was that even though the appellate court would have the benefit of the record and appellate briefs, to require the appellate judges to examine these voluminous pleadings and to consider “all the merits from scratch” would be an imposition upon an Appellate Division which is “overworked” and entitled to the full benefits of the Tax Court’s expertise which would have appeared in a much more comprehensive and detailed opinion.
This position as a basis for a reconsideration is completely unsupported by any legal authority. It is clear that appeals may not be taken from opinions; they may be taken only from judgments. R. 2:2-3(a)(l). As declared by our Supreme Court, “He [the appellant] voices dissatisfaction with the opinion of the Appellate Division. Appeals, however, are taken from judgments and not from opinions.” Hughes v. Eisner, 8 N.J. 228, 229, 84 A.2d 626 (1951). “It has long and invariably been recognized, in particular, that no appeal lies from opinions or from written oral conclusions of courts, but only from judgment or orders.” Credit Bureau Collection Agency v. Lind, 71 N.J.Super. 326, 328, 177 A.2d 36 (App.Div.1961); Melhame v. Demarest Boro., 174 N.J.Super. 28, 31, 415 A.2d 358 (App.Div.1980); cf. Seabrook Co. v. Beck, 174 N.J.Super. 577, 584, 417 A.2d 89 (App.Div.1980). “Appeals are taken from judgments not opinions and ... a respondent can argue any point on the appeal to sustain the trial court’s judgment. State v. Siciliano, 21 N.J. 249, 260 [121 A.2d 490] (1956).” Chimes v. Oritano Motor Hotel, Inc. 195 N.J.Super. 435, 443, 480 A.2d 218 (App.Div.1984).
 In deciding a motion for summary judgment, where as here, the material facts are not in dispute, the trial judge should concisely and lucidly identify the legal issues involved and give a clear pronouncement of the ultimate conclusion and reasons therefor. This, Judge Conley has done. It was neither required nor necessary for the court to have discussed at length *282 and responded to all of the many issues and principles of law raised in the parties’ extensive briefs where, as here, only one narrow legal issue (albeit important) was determined by the court to exist. Once having determined the issue to be decided, only such essential facts, reasoning and conclusions as applied by him to that particular issue were required to be documented. I hold that plaintiffs’ objections to the format, brevity and alleged omissions of the opinion have no merit on a motion for a new trial and do not warrant further consideration.
Since the motions do not allege a “manifest error of fact” and they are not based upon an evidence question, as are usually the basis for motions under this rule, in order for a reconsideration motion to be granted under R. 4:49-1, it must be established clearly and convincingly that the trial judge’s conclusion was based upon a “manifest error of law” which will result in a “miscarriage of justice.”
Since the “miscarriage of justice” standard applies to nonjury actions it is also applicable to completed nonjury actions reassigned to another trial judge such as occurred here. However, it is manifest that in considering this motion, I am not sitting as an appellate court. I am on the same judicial level as the original trial judge; therefore, I may not substitute my interpretation of the Legislature’s intent for his. The test is not whether I would have arrived at a different conclusion had I heard the matter initially.
Plaintiffs concede the dispute between the parties is, as stated by Judge Conley: “... whether in computing their entire net income on which the New Jersey Corporation Business Tax is in part assessed, these taxpayers may exclude or deduct the amount of any taxes paid or accrued to the federal government under the Crude Oil Windfall Profit Tax Act of 1980, 94 Stat. 229, 26 U.S.C.A. §§ 4986-4997.” Amerada Hess Corp. v. Taxation Div. Director, supra, 7 N.J.Tax at 53. They further concede that he correctly concluded that the resolution thereof is controlled by the statutory construction of the seven words of subsection (C): “taxes paid or accrued to the United States *283 on or measured by profits or income ...” as contained in the definition of “entire net income” found in N.J.S.A. 54:10A-4(k)(2)(C).” Id. at 56; emphasis in original.
The net income provision of this statute was added to the CBT in 1958. Since the Crude Oil Windfall Profit Tax Act (WPT) had not been enacted by Congress until 1980, in determining the Legislature’s intent in adopting the statutory words in dispute, Judge Conley relied upon the principle of probable legislative intent (of the 1958 Legislature) had it anticipated the facts herein.
After analyzing the facts and circumstances of the situation, Judge Conley was satisfied and concluded “from the ordinary meaning” of the words contained in N.J.S.A. 54:10A-4(k)(2)(C) and “from the public perception of the purpose of the WPT” that the Legislature in 1979 by not amending this section of the CBT “intended to include the Crude Oil Windfall Profit Tax Act of 1980 within the term “[t]axes paid or accrued to the United States on or measured by profits or income” as stated in N.J.S.A. 54:10A-4(k)(2)(C).” Id. at 56-57.
In their motions for reconsideration plaintiffs allege that the court’s final judgment is erroneous as a matter of law since
in holding that the WPT is a tax “on or measured by profits or income” within the meaning of N.J.S.A. 54:10A-4(k)(2)(C), the Tax Court (i) ignored the ordinary and generally accepted meanings of the terms “income” and “profits” and their accepted senses under general tax law, as delineated by commentators and courts, both Federal and State [footnote omitted], (ii) made no mention whatsoever of the use of the terms “income” and “profits” in the definition of “entire net income” in N.J.S.A. 54:10A(k) and the relationship between those terms so used, and their uses in N.J.S.A. 54:10A4(k)(2)(C), (iii) summarily dismissed as irrelevant the only available legislative history concerning the "entire net income” base of the CBT, namely, that relating to the objective of our Legislature in adding that base to the CBT in 1958, and (iv) disavowed any felt need to even consider the nature and structure of the WPT, much less “the intricacies” of that tax.
In arriving at his conclusion on the first error alleged by (i) above, the judge reasoned that it was not determinative whether the WPT was in fact a tax on or measured by profits or income; but instead what the Legislature perceived it to be. Plaintiffs have failed to submit any legal authority (and this *284 court’s extensive research has also failed to disclose any) to establish that Judge Conley’s analysis of the Legislature’s intention on this issue is clearly erroneous as a matter of law.
Plaintiffs further claim that the trial judge’s reliance on the principle of “probable legislative intent” and utilizing “legislative silence” in his analysis and interpretation of the CBT constitutes error as a matter of law. They state that the court’s determination of what was the 1979 and 1980 Legislature’s. probable intent on this issue is unsupported by legal authority.
Statutory words cover many diverse instances which cannot be foreseen, therefore, their interpretation is necessarily an imaginative projection of the express purposes upon situations arising later for which the Legislature did not expressly provide. As expressed by Professor Walker Gibson, a member of the faculty of New York University Law School at a seminar for appellate judges:
In the case of the legislature’s intention the difficulty is that time has gone barreling on long after the legislature has spoken, and new situations have arisen about which the legislature clearly never had any intention at all. The question then becomes rephrased into something like, “What would the legislature have intended if the legislature had known what was going to happen?” Gibson, “Literary Minds and Judicial Style,” 36 N.Y.TJ.L.Rev. 915, 920 (1961).
When the judiciary is called upon to interpret the meaning of a statute in such a situation, it does not substitute its will for the legislative will but rather in the consideration of all the material elements reaches the result probably intended by the Legislature. Dorkin v. Dover Tp., 29 N.J. 303, 315, 148 A.2d 793 (1959). The statutory construction required thereby is referred to as “probable legislative intent.” The application of this doctrine was recently set forth by our Supreme Court in AMN, Inc. v. So. Bruns. Tp. Rent Leveling Bd., 93 N.J. 518, 461 A.2d 1138 (1983) as follows:
Generally, a court’s duty in construing a statute is to determine the intent of the Legislature. In cases such as this, where it is clear that the drafters of a statute did not consider or even contemplate a specific situation, this Court has adopted as an established rule of statutory construction the policy of interpreting the statute “consonant with the probable intent of the draftsman ‘had he anticipated the situation at hand.’ ” [citations omitted] Such an interpretation *285 will not “turn on literalisms, technisms or the so-called rules of interpretation; [rather] it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation.” J.C. Chap. Prop. Owner’s Protective Ass’n v. City Council of Jersey City, 55 N.J. [86] at 100 [259 A.2d 698 (1969) ] [At 525, 461 A.2d 1138].
Judge Conley, after analyzing what he perceived to be the “commonsense of the situation” interpreted the Legislature’s failure to amend our CBT after the federal enactment of WPT as an indication by our Legislature that “it perceived the windfall profit tax to be a tax on profits or income and felt no need to amend the Corporation Business Tax for that very reason.” Amerada Hess Corp., supra, 7 N.J.Tax at 56.
In further criticizing the trial judge’s interpretation of the Legislature’s probable intent, plaintiffs allege that the “significance attributed by the court to Legislative inactivity” is “flatly inconsistent with binding precedent.” I do not find that the decisions cited so hold. In each of the eases presented by plaintiffs, no definite judicial interpretation or legislative act intervened between the adoption of the statute being interpreted and the claimed legislative silence. In such situations, as plaintiffs have correctly stated, our courts have held there is nothing in which the Legislature could acquiesce; but, in the case under review, the trial court found as a fact that there was something definite to which the New Jersey Legislature could have reacted—the federal enactment of the WPT. This distinction is pointed out in White v. N. Bergen Tp., 77 N.J. 538, 555, 391 A.2d 911 (1978). In arriving at his finding concerning the Legislature’s inaction, Judge Conley explicitly considered the wide publicity given to the adoption of the WPT.
In White, supra, Chief Justice Hughes also made it clear that although legislative silence is not conclusive, it may be significant. Id. at 555, 391 A.2d 911. In reaching his final conclusion of the intent of the 1955 Legislature, Judge Conley did not accept the 1979-1980 Legislature’s silence as conclusive but instead took it into consideration in interpreting that intent.
Plaintiffs disagree with the significance and reliance that the trial court placed upon the Legislature’s inactivity on this *286 subject and the court’s reasoning and conclusions as to the 1955 Legislature’s probable intent; they claim it to be erroneous. However, whether it is erroneous and subject to reversal by an appellate court is not the test before me. As previously posited: Is it, as required by R. 4:49-1 and interpreted by Quick Chek, supra, clearly and convincingly a manifest error as a matter of law? Plaintiffs have cited many cases which they claim support their position but I find from an analysis of each that none supports their claim that Judge Conley’s judicial interpretation of the Legislature’s silence and probable intent is incorrect as a matter of law.
It is recognized that trial court judges are not infallible and on appeal their orders and judgments may be reversed and, at times, the reversal is reversed. Strictly, every reversal by an upper court is a determination that the lower court’s conclusion constituted an error as a matter of law; however, every erroneous conclusion is not necessarily clear or a “manifest” error. Manifest is defined as “1.' readily perceived by the sight; 2. easily understood or recognized by the mind: obvious.” Webster’s New Collegiate Dictionary (9 ed. 1983) at 724.
The precise legal issue presented to the trial court had never before been passed upon by a court of record in this State; therefore, there exists no guiding prior determination. Judge Conley was required to examine the statute, dissect and analyze its meaning and conclude the intent of the seven words in issue. Based upon his analysis of the statute, Judge Conley concluded that plaintiffs were not entitled to deduct their WPT obligations in determining their entire net income. Plaintiffs disagree with his conclusion.
Since there has been no prior court decision on this issue, it cannot be said that his conclusion is clearly a manifest error as a matter of law. Whether, on appeal, our appellate courts will ultimately affirm Judge Conley’s judgment is a matter for future determination. It has often been said in judicial circles that “an occupational hazard of a judge is that he may be wrong” but that wrong does not necessarily constitute “mani *287 fest error.” As aptly stated by Judge Charles M. Merrill of the Ninth Circuit, United States Court of Appeals:
To an appellate judge, dealing with principles of law rather than with physical facts, what is “right” and what is “wrong” is largely a question of opinion. There is very little that is absolute. When one is declared “wrong” by a majority of one’s brothers or by a higher court it can often be said simply that there is a difference of opinion. Personally I do not see why any greater opprobruim should attend reversal by a higher court than attends the filing of a dissenting opinion. In either case all that is revealed is that opinions differ and that upon this difference one is in the minority. And whenever there is difference someone must be in the minority; and if there were no room for difference there would be little need for appellate courts. [Merrill, “Some Reflections on the Business of Judging,” 40 Cal.St.BJ 811, 814 (1965)]
I conclude that plaintiffs have failed to establish the existence of either a manifest error of law or a miscarriage of justice as required by R. 4:49-1 or -2. Motions for reconsideration are denied.