**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0065-22

PETER KRASSNER,

    Plaintiff-Respondent,

v.

WALMART,

    Defendant-Appellant,

and

JASON CUZZO,

    Defendant.

_____

Argued December 4, 2023 – Decided March 6, 2024

Before Judges Mawla, Marczyk, and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0839-18.

Michael K. Furey argued the cause for appellant (Day Pitney, LLP, attorneys; Michael K. Furey, of counsel and on the briefs; Joseph W. Ritter, on the briefs).

Brett Roger Greiner argued the cause for respondent (Levinson Axelrod, PA, attorneys; Brett Roger Greiner, on the brief).

PER CURIAM

Defendant Walmart Stores East, L.P. ("Walmart") appeals from the trial court's August 10, 2022 order denying its motions for a new trial and a remittitur and denying its motion for reconsideration of the court's denial of a motion for a directed verdict. Walmart further appeals the September 1, 2022 order of judgment. Based on our review of the record and applicable legal principles, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

On February 23, 2018, plaintiff Peter Krassner was a customer at Walmart in Hamilton, Mercer County. Plaintiff entered an aisle where a beam extended from the floor to the ceiling partially obstructing a portion of the aisle. A fire extinguisher was attached to the aisle side of the beam. A short time after entering the aisle, plaintiff started backing out of the aisle while pulling his shopping cart. Plaintiff did not look behind him as he moved backwards towards the extinguisher. His left shoulder "lightly brushed" the fire extinguisher mounted on the beam causing it to fall onto his left foot. Plaintiff picked up the

fallen extinguisher and placed it next to the beam. The incident was captured by defendant's video surveillance system.

Plaintiff subsequently filed an incident report with Walmart and showed Walmart employees where the incident occurred. One of the employees, David Ferguson—a customer service manager—observed the band for the fire extinguisher was "warped," "buckled," and not "perfectly rounded." The straps were supposed to be "flush against the cylinder of the fire extinguisher." When he tried placing the fire extinguisher back in the harness and to recreate the incident, the "latch disengaged immediately." Ferguson noted the band was not supposed to disengage from a single bump. Ferguson also reviewed the video and stated that it was "fair to say" plaintiff did not make any forceful movements towards the extinguisher.

Walmart's store manager, Jason Cuzzo, also testified, based on the video footage, he did not observe plaintiff do anything inappropriate leading to the incident. He testified Walmart's asset protection department is responsible for inspecting fire extinguishers and documenting the inspections monthly. They are also supposed to "visually keep their eye[s] on things" at other times between inspections but are only required to complete a formal check-list once a month.

 A-0065-22

The asset protection manager Barbara Laytham's deposition testimony was read to the jury. She acknowledged that if someone had inspected the extinguisher's harness before the accident, they may have noticed if it was exceedingly easy to undo. She also stated defendant kept extra harnesses in the store to replace loose harnesses.

Following the incident, plaintiff went to the emergency room at the St. Francis Medical Center where he was diagnosed with a contusion of the left foot and was placed in a boot. He also went to the emergency room at Robert Wood Johnson University Hospital in March 2018, due to continued significant pain, swelling, and limited range of motion in his foot.

Plaintiff continued to experience excruciating pain, discoloration, and a lack of ability to use his foot. He was eventually referred to Dr. Lance Markbreiter in June 2018. Dr. Markbreiter is an orthopedic surgeon whose practice includes treating patients with Complex Regional Pain Syndrome ("CRPS").[1] He has also lectured regarding CRPS. Dr. Markbreiter ultimately

---

[1] CRPS is a broad term that covers a condition involving long-lasting pain and inflammation that can occur after an injury or a medical event or trauma. Although CRPS can occur anywhere in the body, it usually affects a person's arm, leg, hand, or foot. People living with CRPS have pain that is much greater than normal, even without a visible injury. Severe or long-lasting cases of CRPS can be disabling and can prevent a person from working or doing their usual

A-0065-22

diagnosed plaintiff with CRPS of the left foot.  In reaching this conclusion, Dr. Markbreiter used the "Budapest Criteria," a widely accepted standard for diagnosing CRPS.[2]  Dr. Markbreiter testified he also based his diagnosis on plaintiff's electromyography ("EMG") and nerve conduction studies ("NCS").  He noted plaintiff had already started to develop progressive CRPS when he went to Robert Wood Johnson in March 2018.

Plaintiff was referred to a pain management specialist for sympathetic nerve block injections, but they were unsuccessful.  When the nerve block injections failed, it was recommended plaintiff have a spinal cord stimulator implanted to assist in controlling pain.  Plaintiff decided not to undergo this procedure because of the associated risks.  Dr. Markbreiter testified there is "no curative treatment" for CRPS, and he opined plaintiff has a "permanent injury."

---

activities.  Nat'l Inst. of Health, Complex Reg'l Pain Syndrome, Nat'l Inst. of Neurological Disorders & Stroke, https://www.ninds.nih.gov/health-information/disorders/complex-regional-pain-syndrome (last reviewed Jan. 31, 2024).

[2]  According to Dr. Markbreiter, the Budapest Criteria is based on symptoms and signs of abnormal pain sensation such as allodynia (disproportionate pain or sensation) or hyperalgesia; vasomotor (temperature or skin color changes); sudomotor/edema (changes in sweating or limb swelling);  and motor/trophic (decreased mobility, changes in hair, nails, and skin) changes.

A-0065-22

Plaintiff, who was sixty-four at the time of trial, is the primary caregiver for two of his grandchildren. He testified he is living with chronic pain. The CRPS has impacted his ability to do the "majority" of activities he did prior to the accident. He can no longer walk or stand for long periods of time and must avoid touching the top of his foot. Moreover, he testified his altered gait aggravated the arthritis in his hips. Plaintiff also suffers from depression and anxiety as a result of living with chronic pain.[3]

Defendant's experts disputed Dr. Markbreiter's conclusions concerning the diagnosis of CRPS. Walmart's experts opined plaintiff's injury merely consisted of a contusion and hematoma. Moreover, plaintiff has a history of diabetes, vascular disease, cardiovascular disease, atrial fibrillation, and osteoarthritis. Defendant's experts concluded plaintiff's extreme bruising from the accident was caused by his pre-existing health problems and that he did not suffer from CRPS.

Specifically, Dr. Eric Mittelman, a board-certified neurologist, testified plaintiff did not have any neurological injury or any other neurological condition. Instead, he found plaintiff had risk factors including diabetes,

---

[3] Plaintiff's life expectancy at the time of trial was 19.9 years.

A-0065-22

arthritis, and vascular disease that explain plaintiff's hematoma and pain. He also opined plaintiff did not satisfy the Budapest Criteria.

Dr. Anthony Parks, a board-certified orthopedic surgeon, opined plaintiff's pain in his shoulders, elbows, hips, and knees was unrelated to the accident and was caused by pre-existing osteoarthritis in these joints. He also explained that the accident did not cause plaintiff an injury or aggravation to these joints. Dr. Parks also found plaintiff only sustained a contusion. Moreover, he testified plaintiff did not have CRPS based on the Budapest Criteria.

On May 16, 2022, the jury returned a verdict for plaintiff in the amount of $1,754,135. The jury found plaintiff was twenty-six percent liable for the incident, and Walmart was seventy-four percent at fault. Accordingly, the trial court molded the verdict to $1,317,299.90. Walmart moved for reconsideration of its motion for a directed verdict. Alternatively, it also moved for a new trial or remittitur of damages based on a variety of grounds, including plaintiff's failure to prove the existence of a hazard, plaintiff's failure to prove notice, the excessiveness of the verdict, and the court's issuance of a mode-of-operation instruction to the jury. On August 10, 2022, the trial court denied defendant's post-trial motions in a written decision. On September 1, 2022, the trial court

7

entered an amended order of judgment in the amount of $1,491,562.50, which included pre-judgment interest.

## II.

Walmart raises several issues on appeal. First, it asserts the trial court committed reversible error by utilizing a mode-of-operation charge. It argues the trial court erred by denying its motion for a new trial because: plaintiff did not present evidence to support the existence of a dangerous condition; plaintiff failed to demonstrate Walmart had notice of the allegedly dangerous condition; and plaintiff did not provide any expert testimony to support his claim that the location and/or mounting of the fire extinguisher constituted a dangerous condition or that Walmart had acted negligently. Walmart further contends plaintiff's counsel impermissibly urged the jury to draw adverse inferences based on Walmart's failure to call certain witness or present other evidence. Walmart also asserts the damages award was a miscarriage of justice. We address these arguments in turn below.

## A.

Walmart argues the trial court improperly instructed the jury by giving a mode-of-operation charge that allowed the jury to impose liability on defendant

A-0065-22

without finding any notice, either actual or constructive. Walmart asserts that in giving this jury charge, the trial court committed reversible error.

In Washington v. Perez, our Supreme Court articulated the standard of review for challenging jury instructions in civil cases. 219 N.J. 338 (2014).

> Appellate review of a challenged jury instruction entails not only scrutiny of the charge itself, but an inquiry as to whether an erroneous charge may have affected the trial's result. Notably, "in construing a jury charge, a court must examine the charge as a whole, rather than focus on individual errors in isolation." Viscik v. Fowler Equip. Co., 173 N.J. 1, 18 (2002). "As a general matter, [appellate courts] will not reverse if an erroneous jury instruction was 'incapable of producing an unjust result or prejudicing substantial rights.'" Mandal v. Port Auth. of N.Y. & N.J., 430 N.J. Super. 287, 296 (App. Div. 2013). However, erroneous jury instructions "constitute[] reversible error where the jury outcome might have been different had the jury been instructed correctly." Velazquez ex rel. Velazquez v. Portadin, 163 N.J. 677, 688 (2000). Generally, "erroneous instructions on material points are presumed to be reversible error." McClelland v. Tucker, 273 N.J. Super. 410, 417 (App. Div. 1994).
>
> [Id. at 351 (citations reformatted).]

Review of jury instructions is a two-step process. First, we must determine whether an error actually occurred. "In civil matters, the trial court should give an instruction that appropriately guides the jury on the legal basis of a plaintiff's claim or a defendant's affirmative defense, so long as there is a

9

reasonable factual basis in the evidence to support that claim or defense." Walker v. Costco Wholesale Warehouse, 445 N.J. Super. 111, 120 (App. Div. 2016). "Jury charges 'must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them . . . .'" Velazquez, 163 N.J. at 688 (quoting Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92 (1966)). Second, we must determine whether that error "may have affected the trial's result." Walker, 445 N.J. Super. at 120 (quoting Washington, 219 N.J. at 351). Importantly, we have noted that an improper jury instruction is a poor candidate for application of the harmless error rule, and a charge which misleads a jury will require a reversal and a new trial. Vallejo by Morales v. Rahway Police Dep't, 292 N.J. Super. 333, 342 (App. Div. 1996) (internal citations omitted).

Over Walmart's objection, the court utilized Model Jury Charge (Civil), 5.20F(10) in charging the jury despite the court recognizing this was not a mode-of-operation case. It appears there was some confusion about the applicability of the charge because its title did not include "mode-of-operation" language unlike the current mode-of-operation jury charge. See Model Jury Charge (Civil), 5.20F(11), "Mode of Operation Rule" (rev. Nov. 2022). The court noted

in its post-trial decision, "this [c]ourt did not provide a jury charge specific to the [m]ode[-]of[-o]peration [r]ule. The jury was told that [p]laintiff must prove actual or constructive notice . . . . Thus, this [c]ourt did not instruct the jury that a finding of notice is absolutely not required." However, although the court did give the standard notice and constructive notice charges, Model Jury Charge (Civil), 5.20F(8), "Notice of Particular Danger as Condition of Liability" (rev. Nov. 2022), it did in fact also give the jury a mode-of-operation charge, Model Jury Charge (Civil), 5.20F(10), "Notice Not Required Under Certain Circumstances" (rev. Nov. 2022). Even though the title of 5.20F(10) had changed and a new mode-of-operation charge has since been adopted— 5.20F(11)—the court erred in giving the 5.20F(10) charge because it was, in substance, a mode-of-operation charge. This incorrect charge had the clear capacity to impact the outcome of the verdict on liability.

The court instructed the jury using the current version of Model Jury Charge (Civil), 5.20F(10) "Notice Not Required Under Certain Circumstances," (rev. Nov. 2022). The charge is textually identical to the previous version, which was the original mode-of-operation jury charge. The current version reads:

> A proprietor of business premises has the duty to provide a reasonably safe place for customers. If you

find that the premises were in a hazardous condition, whether caused by defendant's employees or by others, such as customers, and if you find that said hazardous condition was likely to result from the particular manner in which defendant's business was conducted, and if you find that defendant failed to take reasonable measures to prevent the hazardous condition from arising or failed to take reasonable measures to discover and correct such hazardous condition, then defendant is liable to plaintiff. In these circumstances, defendant would be liable even if defendant and defendant's employees did not have actual or constructive knowledge of the particular unsafe condition, which caused the accident and injury.

[Ibid.]

The prior version of the same exact charge was titled "Notice Not Required When Mode of Operation Creates Danger." (Emphasis added).[4] In short, the charge was designed to address cases involving mode-of-operation issues.

---

[4] Compare Model Jury Charge (Civil), 5.20F(11) "Notice Not Required When Mode of Operation Creates Danger," (approved May, 1970), with the newly numbered Model Jury Charge (Civil), 5.20F(10) "Notice Not Required Under Certain Circumstances," (rev. Nov. 2022). The 1970 version titled "Notice Not Required When Mode of Operation Creates Danger" has the exact same substantive language and reads:

A proprietor of business premises has the duty to provide a reasonably safe place for his/her customers. If you find that the premises were in a hazardous condition, whether caused by defendant's employees or by others, such as customers, and if you find that said hazardous condition was likely to result from the

There are several issues with Model Jury Charge (Civil), 5.20F(10), which render it improper for use in the present case. The drafters did not make any modifications to it when they implemented 5.20(F)(11), which is the current mode-of-operation jury charge. By keeping 5.20F(10) in the Model Jury Charges, but changing its title, it created unnecessary confusion. In fact, in Prioleau v. Kentucky Fried Chicken, Inc., our Supreme Court noted: "The mode-of-operation charge that has been in use since 1970, Model Jury Charge (Civil)[,] 5.20F(10), neither reflects recent jurisprudence regarding the rule nor clearly explains the purpose and application of the rule. We therefore urge the Model Civil Jury Charge Committee to review the model charge." 223 N.J. 245,

particular manner in which defendant's business was conducted, and if you find that defendant failed to take reasonable measures to prevent the hazardous condition from arising or failed to take reasonable measures to discover and correct such hazardous condition, then defendant is liable to plaintiff. In these circumstances defendant would be liable even if defendant and his/her employees did not have actual or constructive knowledge of the particular unsafe condition, which cause[d] the accident and injury.

[Model Jury Charge (Civil), 5.20F(11), "Notice Not Required When Mode of Operation Creates Danger," (approved May, 1970).]

263 n.5 (2015). The Committee ultimately created a new mode-of-operation jury charge, 5.20F(11), but left the text of 5.20F(10) unchanged with a new heading: "Notice Not Required Under Certain Circumstances."

Importantly, the <u>Prioleau</u> Court made clear the mode-of-operation doctrine "has never been expanded beyond the self-service setting." <u>Id.</u> at 262. Here, there was no basis for the court to utilize 5.20F(10) under the specific facts in this case. There is no suggestion plaintiff's contact with the fire extinguisher occurred in the context of a self-service operation. In fact, the court acknowledged the mode-of-operation charge was not implicated in this matter.

By instructing the jury in accordance with <u>Model Jury Charge (Civil)</u>, 5.20F(10), the court absolved plaintiff of their burden to prove notice or constructive notice. Plaintiff argues the trial court did not err in giving this jury charge because it was, at most, a harmless error. More particularly, plaintiff asserts that because the trial court also charged the jury with <u>Model Jury Charge (Civil)</u>, 5.20F(8),[5] it was not prejudicial to also charge 5.20F(10). This argument

---

[5] <u>Model Jury Charge (Civil)</u>, 5.20F(8), "Notice of Particular Danger as Condition of Liability," reads:

> If you find that the land (or premises) was not in a reasonably safe condition, then, in order to recover, plaintiff must show either: (a) Actual Notice for a

is unpersuasive because 5.20F(10) completely negates the need for notice, even if it is coupled with 5.20F(8).

In short, 5.20F(10) is not applicable to the facts in this matter. "It is fundamental that '[a]ppropriate and proper charges to a jury are essential for a fair trial.'" Prioleau, 223 N.J. at 256 (alteration in original) (quoting Velazquez, 163 N.J. at 688). "The jury charge is a road map that explains the applicable legal principles, outlines the jury's function, and spells out 'how the jury should apply the legal principles charged to the facts of the case at hand.'" Toto v. Ensuar, 196 N.J. 134, 144 (2008) (quoting Viscik, 173 N.J. at 18). The charge here did not provide the jury with the proper guidance as to what legal principles to apply to the facts in this matter. Therefore, we are constrained to reverse

period of time before plaintiff's injury to permit the owner/occupier, in the exercise of reasonable care, to have corrected it; or (b) Constructive Notice. When the term Actual Notice is used, we mean that the owner/occupier or the owner's/occupier's employees actually knew about the unsafe condition. When the term Constructive Notice is used, we mean that the particular condition existed for such period of time that an owner/occupier of the premises in the exercise of reasonable care should have discovered its existence. That is to say, constructive notice means that the person having a duty of care to another is deemed to have notice of such unsafe conditions, which exist for such period of time that a person of reasonable diligence would have discovered them.

A-0065-22

based on the use of this incorrect jury charge, and we remand for a new trial on liability.

B.

Walmart next argues the trial court should have ordered a new trial on liability and damages because the jury's verdict is contrary to the weight of the evidence presented at trial concerning whether: (i) a dangerous condition caused the accident; (ii) Walmart had notice of a dangerous condition before the accident; and (iii) expert testimony was required to prove the mounting and location of the fire extinguisher constituted a dangerous condition.

Our review of a motion for a new trial pursuant to Rule 4:49-1 and a motion for judgment notwithstanding a verdict pursuant to Rule 4:40-2 requires that "we apply the same standard that governs the trial courts." Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016); see also Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011). We will disturb the trial court's ruling only if "it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a). See Risko, 206 N.J. at 521 (quoting Kulbacki v. Sobchinsky, 38 N.J. 435, 456 (1962) ("[A] motion for a new trial 'should be granted only where to do otherwise would result in a miscarriage of justice shocking to the conscience of the court.'")). A miscarriage

of justice may "arise . . . from manifest lack of inherently credible evidence to support the finding, obvious overlooking or under[-]valuation of crucial evidence, [or] a clearly unjust result . . . ." Risko, 206 N.J. at 521 (alteration in original) (quoting Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996)).

"On a motion for a new trial, all evidence supporting the verdict must be accepted as true, and all reasonable inferences must be drawn in favor of upholding the verdict." Boryszewski ex rel. Boryszewski v. Burke, 380 N.J. Super. 361, 391 (App. Div. 2005). The court's function is mechanical; it "is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969).

"A jury's verdict, including an award of damages, is cloaked with a 'presumption of correctness.'" Cuevas v. Wentworth Grp., 226 N.J. 480, 501 (2016) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 598 (1977)). "[T]he trial court may not disturb a damages award entered by a jury unless it is so grossly excessive or so grossly inadequate 'that it shocks the judicial conscience.'" Orientale v. Jennings, 239 N.J. 569, 595 (2019) (quoting Cuevas, 226 N.J. at 485). "If a damages award meets that standard, then the court must

grant a new trial," but "has the option of recommending to the parties a remittitur or an additur in lieu of a new trial," which "requires the mutual consent of the parties." Id. at 596. Moreover, "[j]udicial review of the correctness of a jury's damages award requires that the trial record be viewed in the light most favorable to plaintiffs." Cuevas, 226 N.J. at 488. We review additur motions under an abuse of discretion standard. Tronolone v. Palmer, 224 N.J. Super. 92, 104 (App. Div. 1988). We will also not reverse a trial court's decision to deny a motion for a new trial "unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1.

Walmart argues plaintiff failed to present the necessary evidence to prove his claim the fire extinguisher's placement on the beam created a dangerous condition. Defendant contends the only "evidence" of this claim was plaintiff's counsel's assertion that the placement was dangerous. Defendant also argues plaintiff failed to offer expert testimony supporting this claim.

Walmart next argues plaintiff failed to proffer evidence defendant had actual or constructive notice of the fire extinguisher being a dangerous condition. It notes plaintiff had no knowledge regarding whether the mount was broken before the incident or, if it was broken, for how long it had existed in that condition. It further argues the fire extinguishers at the store were subject

18                                                                      A-0065-22

to monthly inspections, and the extinguisher at issue passed its most recent inspection before the accident.

Walmart next contends plaintiff was required to produce expert testimony regarding issues concerning the location and mounting of the fire extinguisher. Defendant further asserts there was a need for expert testimony regarding the force required to bend the mounting brackets and whether the brackets were damaged before or after the accident.

A cause of action for negligence "requires the establishment of four elements:  (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages."  Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013).  The plaintiff "bears the burden of establishing those elements[] 'by some competent proof' . . . ."  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citation omitted) (quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953)).

"[A] proprietor's duty to his invitee is one of due care under all the circumstances."  Prioleau, 223 N.J. at 257 (quoting Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964)).  "The duty of due care to a business invitee includes an affirmative duty to inspect the premises and 'requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe

condition, and to avoid creating conditions that would render the premises unsafe.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 601 (App. Div. 2016) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)).

Thus, "an invitee seeking to hold a business proprietor liable in negligence 'must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Prioleau, 223 N.J. at 257 (quoting Nisivoccia, 175 N.J. at 563). "A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe, 443 N.J. Super. at 602 (quoting Parmenter v. Jarvis Drug Store, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). Constructive notice may be inferred from "[t]he characteristics of the dangerous condition." Ibid.

We are satisfied the trial court properly determined plaintiff presented sufficient evidence to raise a fact issue as to whether the fire extinguisher was a dangerous condition and whether Walmart had constructive notice. Cuzzo acknowledged the fire extinguisher encroached into the side aisle where plaintiff encountered it. He further stated that it would not have been appropriate to move

it to the side of the beam facing the main aisle because Walmart generally tries to keep those aisles as "free from obstructions as possible."

Based on these facts, a jury could conclude this suggests that a hazardous condition could be created if the fire extinguisher, encroaching as it does into the walkway, were placed in any aisle, particularly a narrower side aisle. This, coupled with the testimony that plaintiff dislodged the extinguisher by "lightly brush[ing]" against it, when Walmart's employees indicated that it should not have fallen under such circumstances, is sufficient evidence to raise a fact issue for the jury as to whether this was a dangerous condition.

We are further satisfied that when viewing the facts here in a light most favorable to plaintiff along with all reasonable inferences, there was sufficient evidence presented to raise a fact issue as to whether Walmart had constructive notice of the condition. Walmart acknowledged that upon inspection following the incident, the fire extinguisher's metal harness was warped and therefore was not in the typical round configuration so that it could sit flush against the cylinder of the extinguisher. Ferguson also testified the latch on the mount for the extinguisher easily disengaged. Plaintiff acknowledged there was no direct evidence of the condition of the harness before the accident, but we agree the circumstantial evidence raises a reasonable inference that the apparatus securing

21

the extinguisher to the beam was damaged before the accident and could have been discovered by a reasonable inspection. Moreover, although Walmart argued there were no prior similar incidents involving a fire extinguisher being knocked off a beam, the evidence also showed Walmart kept back-up brackets in the store. Accordingly, the trial court correctly denied Walmart's motion for reconsideration for a directed verdict and for a new trial based on the constructive notice issue.

Given our decision above regarding the improper jury charge, the jury will again have to resolve the disputed facts regarding the condition of the fire extinguisher and determine if the evidence supports the argument that Walmart had constructive notice of the condition. We agree with the trial court that when viewing the evidence in the light most favorable to the plaintiff along with all reasonable inferences, there was adequate evidence to withstand a motion for a new trial or a directed verdict as to the alleged dangerous condition and constructive notice.

We next address whether the court erred in not requiring plaintiff to produce expert testimony as to the alleged dangerous condition and the location and mounting of the fire extinguisher. "In most negligence cases, the plaintiff is not required to establish the applicable standard of care." Davis, 219 N.J. at

A-0065-22

406 (citing Sanzari v. Rosenfeld, 34 N.J. 128, 134 (1961)).  In those instances, "[i]t is sufficient for [the] plaintiff to show what the defendant did and what the circumstances were.  The applicable standard of conduct is then supplied by the jury[,] which is competent to determine what precautions a reasonably prudent man in the position of the defendant would have taken."  Id. 406-07 (alterations in original) (quoting Sanzari, 34 N.J. at 134).  "Such cases involve facts about which 'a layperson's common knowledge is sufficient to permit a jury to find that the duty of care has been breached without the aid of an expert's opinion.'"  Id. at 407 (quoting Giantonnio v. Taccard, 291 N.J. Super. 31, 43 (App. Div. 1996)).

"In some cases, however, the 'jury is not competent to supply the standard by which to measure the defendant's conduct,' and the plaintiff must instead 'establish the requisite standard of care and [the defendant's] deviation from that standard' by 'present[ing] reliable expert testimony on the subject.'"  Ibid. (alterations in original) (citation omitted) (first quoting Sanzari, 34 N.J. at 134-35; and then quoting Giantonnio, 291 N.J. at 42); see also N.J.R.E. 702 (permitting expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

The Supreme Court has explained that "when deciding whether expert testimony is necessary, a court properly considers 'whether the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the [defendant] was reasonable.'" Davis, 219 N.J. at 407 (alteration in original) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)); see also Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 394 (2001) (quoting Est. of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)) (holding expert testimony is not needed under the affidavit of merit statute when the jury's "common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence"). In cases where "the factfinder would not be expected to have sufficient knowledge or experience," expert testimony is needed because the jury "would have to speculate" regarding the standard of care. Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001).

We are unconvinced that expert testimony was required under the facts in this case. The jury here could determine whether Walmart's actions under the circumstances were reasonable and what precautions it should have taken. The facts regarding the placement of the fire extinguisher and related inspections to determine whether it was sufficiently secured to the beam were not so esoteric

that jurors would be unable to form a judgment as to whether Walmart's conduct was reasonable.  Accordingly, a jury could determine the applicable standard of conduct as to the issues raised by the parties.

C.

Relying primarily on Washington v. Perez, defendant argues plaintiff's counsel repeatedly urged the jury to draw adverse inferences from defendant's failures to call certain witnesses to testify or to present certain video evidence. 219 N.J. at 352.  Walmart asserts that in doing so, plaintiff did not comply with clear legal requirements to make an adverse inference argument because plaintiff's counsel did not give defense counsel, or the court, notice he would be making such an argument.

Because we are remanding this case because of an improper jury charge, there will be a new trial on liability.  We do not know what witnesses may be called or what evidence will be introduced on remand.  It may be that many of the issues raised by Walmart will be moot at the new trial.  Given the dynamics of the new trial will be different, we need not address Walmart's adverse inference arguments at this juncture.  Moreover, if these issues arise again,

A-0065-22

Walmart may interpose an appropriate objection,[6] unlike the first trial, so the trial court can first address the arguments and create a proper record. On remand, the parties and the court shall be guided by Washington and its progeny to the extent it is applicable.

D.

Lastly, Walmart argues the trial court should order a new trial on damages because the verdict of $1,754,135—reduced to $1,317,299.90 based on the jury's comparative negligence finding—was a miscarriage of justice and should shock the judicial conscience. Walmart also contends the damages warrant a new trial because the jury verdict was the result of sympathy, passion, and prejudice.

More particularly, Walmart asserts plaintiff only suffered a contusion that developed into a bruise, and not a dislocation or a fracture. Walmart also emphasizes the fact that plaintiff was able to move around after the accident, went home, and took a shower before seeking medical attention is evidence he

---

[6] "[T]he '[f]ailure to make a timely objection indicates that defense counsel did not believe the remarks were prejudicial at the time they were made,' and it 'also deprives the court of the opportunity to take curative action.'" Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009) (second alteration in original) (quoting State v. Timmendequas, 161 N.J. 515, 576 (1999)). "Where defense counsel has not objected, we generally will not reverse unless plain error is shown." Ibid. (citing R. 2:10–2).

A-0065-22

was not severely injured. Furthermore, Walmart notes plaintiff's medical bills only amounted to $26,000, and he has not sought any formal treatment since 2020. Walmart emphasizes its experts—Drs. Mittelman and Park—both found plaintiff did not have CRPS based on the Budapest Criteria, and his complaints stemmed from his pre-existing medical conditions. Walmart also contends plaintiff's counsel's closing argument (alleging Walmart misrepresented its efforts to ensure the fire extinguisher did not pose a danger) inflamed the jury and caused them to lose objectivity.

"Judicial review of the correctness of a jury's damages award requires that the trial record be viewed in the light most favorable to plaintiffs." Cuevas, 226 N.J. at 488. "When a court is persuaded that a new trial must be granted based solely on the excessiveness of the jury's damages award, it has the power to enter a remittitur reducing the award to the highest amount that could be sustained by the evidence." Id. at 499. Courts "must exercise the power of remittitur with great restraint." Ibid. "A jury's verdict, including an award of damages, is cloaked with a 'presumption of correctness,'" which "is not overcome unless a defendant can establish, 'clearly and convincingly,' that the award is 'a miscarriage of justice.'" Id. at 501 (quoting Baxter, 74 N.J. at 596, 598). "[E]ven a seemingly high award should not be disturbed; only if the award is one no

rational jury could have returned, one so grossly excessive, so wide of the mark and pervaded by a sense of wrongness that it shocks the judicial conscience, should a court grant a remittitur." Id. at 500.

The standard for "setting aside a verdict already sustained by the trial judge is high." Horn v. Vill. Supermarkets, Inc., 260 N.J. Super. 165, 178 (App. Div. 1992). Neither a trial judge nor we may reweigh the evidence and impose a new verdict simply because they disagree with the jury's decision. Battista v. Olson, 213 N.J. Super. 137, 142 (App. Div. 1986). "Only when[,] upon examination[,] the verdict is found to be so contrary to the weight of the evidence as to give rise to the inescapable conclusion that it is the result of mistake, passion, prejudice or partiality, may it be disturbed." Aiello v. Myzie, 88 N.J. Super. 187, 194 (App. Div. 1965). "Furthermore, jury verdicts should be set aside in favor of new trials only with reluctance and then only in the cases of clear injustice." Crego v. Carp, 295 N.J. Super. 565, 577 (App. Div. 1996); R. 4:49-1(a).

We accord appropriate deference to the trial court's "feel of the case," Baxter, 74 N.J. at 600, and will not reverse a trial judge's decision on whether the jury verdict is against the weight of the evidence "unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1; Caldwell v.

Haynes, 136 N.J. 422, 432 (1994). Additionally, the jury's damage assessment is entitled to a presumption of correctness and should stand "unless it is so disproportionate to the injury and resulting disability shown as to shock [the judicial] conscience and to convince [the court] that to sustain the award would be manifestly unjust." Baxter, 74 N.J. at 596. "This conception of the weight of the evidence governs the trial court as well as the appellate court; and it applies to civil and criminal causes." Hager v. Weber, 7 N.J. 201, 210 (1951).

Here, the award was not so grossly excessive that it shocks the judicial conscience. The jury had the opportunity to assess the credibility of several competing witnesses. Viewing the record in a light most favorably to plaintiff, there was sufficient evidence to support the damages award. Although we recognize plaintiff's damages were contested by Walmart, Dr. Markbreiter's testimony regarding the permanency and debilitating nature of CRPS, coupled with plaintiff's testimony about his severe and enduring pain—in the context of a near twenty-year life expectancy—leads us to conclude the verdict was amply supported by the record and not the result of mistake, passion, prejudice, or partiality.

Furthermore, the jury was free to accept or reject the testimony of Walmart's experts. We would also note, on the issue of liability, the jury found

A-0065-22

plaintiff to be twenty-six percent negligent in causing the accident, dispelling any notion the jury lost "its objectivity" as argued by Walmart. We also are unpersuaded plaintiff's counsel's comments on closing were so inappropriate that they inflamed the jury. In short, there was more than a sufficient record to support the jury's determination, and we discern no basis to disturb the damages verdict. Although we remand for a new trial on liability, we affirm the jury's verdict on damages.

To the extent we have not specifically addressed any remaining arguments raised on appeal, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for a new trial on liability only. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0065-22